(34 App. Div. 61.)

PEOPLE ex rel. MERSHON v. SHAW et al.

(Supreme Court, Appellate Division, Second Department. November 3, 1898.)

1. VILLAGE TRUSTEES—DISCONTINUING STREET.
    Under Village Law (Laws 1897, c. 414) § 147, requiring a village board of trustees, to which petition to close a street has been made, to meet at a time specified in a notice, to consider the petition, and providing that it "may adjourn the hearing, and must determine the matter within 20 days from the date fixed for such hearing," its determination must be at a meeting of the board, and it is not enough that its minutes show that, after an adjournment, a determination was filed, purporting to have been made at a time when it does not appear any meeting was appointed to be or was held.

2. SAME—REVIEW—JUDICIAL PROCEEDING.
    The action of a board of village trustees in determining to discontinue a street under Village Law (Laws 1897, c. 414) §§ 145–147, is judicial in its character, and therefore reviewable by certiorari; the proceeding being required to be instituted by petition, and the board enjoined to "determine the matter" within a specified time.

3. SAME—WHO ENTITLED TO REVIEW.

    One who, by the proposed closing of a street, will be deprived of the only direct way to reach the shore of a harbor, only two blocks from his residence, and will be compelled to make a considerable detour to reach it, and by reason thereof will be put to great inconvenience, and will have the value of his property materially lessened, is the "owner of land affected by the proposed discontinuance," to whom Village Law (Laws 1897, c. 414) § 146, requires notice of hearing to be given, and who, therefore, has a right of review by certiorari.

    Certiorari on the relation of William W. Mershon against Daniel A. Shaw, president, and George H. Brouwer and others, trustees, of the village of Sea Cliff, to review a determination by such board of trustees discontinuing a portion of Dayton street in said village.

    Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and WOODWARD, JJ.

    Henry A. Monfort, for relator.

    Townsend Scudder, for defendants.

    WILLARD BARTLETT, J.   According to the allegations of the petition, the relator is the owner of a dwelling house, in which he resides, located upon a lot belonging to him on Dayton street in the village of Sea Cliff, one block to the east of that portion of the street which the board of trustees of the village have undertaken to close by the proceedings brought up for review by this writ.  Those proceedings were instituted under sections 145–147 of the village law (Laws 1897, c. 414).  Section 145 provides that five resident freeholders may present to the board of trustees a petition for laying out, altering, widening, narrowing, or discontinuing a street in a village, and prescribes what facts must be stated in such petition.  Section 146 directs that upon the presentation thereof the board shall immediately give notice that it will meet at a specified time and place, not less than 10 nor more than 20 days from the date of such notice, to consider the petition.  In the case of the proposed discontinuance of a street the notice is required to be served upon each owner of land adjoining the street proposed to be discontinued, "and also upon the owner of land otherwise affected by the proposed discontinuance." Section 147 requires the board to meet at the time and place specified in the notice to consider the petition, and also any objections thereto; and further provides as follows: "The board may adjourn the hearing and must determine the matter within twenty days from the date fixed for such hearing.  If the board determine to grant the petition, an order must be entered in its minutes containing a description of the land, if any, to be taken." In the present case the minutes of the board of trustees of the village of Sea Cliff, which are set out in the return to the writ of certiorari, show that a petition of five resident freeholders for the discontinuance of that part of Dayton street west of Locust Place was received at a meeting of the board held on October 13, 1897.  The minutes also show that the board then ordered the publication and posting of a notice to the effect that the board would meet in its room on October 27, 1897, at 9 o'clock in the evening, to consider said petition.  The minutes of a meeting held on October 20, 1897, state that the clerk reported the posting of the notice in

five public places, and the advertisement thereof in a Sea Cliff newspaper. They also state: "The above notice was served by the clerk on John T. Pirie, Samuel Stenson, D. W. Pardee, C. S. Dunning, and William Mershon,"—the last-named being the relator. The time when such service was made, however, is not specified. The minutes of the meeting appointed for the hearing on October 27, 1897, set out at length a letter received by the board in opposition to the proposed discontinuance of the part of Dayton street in question, and state that the relator appeared before the board, and opposed the projected closing of that portion of the street. According to the minutes, the hearing was then adjourned, but not to any specified time or place. The next extract from the minutes which we find in the return relates to a meeting held on November 20, 1897. From this it appears that on that date the board ordered to be placed on the minutes the following entry relative to the closing of Dayton street, west of Locust Place:

The following determination was filed with the village clerk Nov. 16, '97:

"In the Matter of the Application to Close that Portion of Dayton Street Lying West of Locust Place.

"The hearing in this matter having been duly held at the village board room, pursuant to the notice issued therein, and of the statute in such case made and provided, on the 27th day of Oct., 1897, and after due consideration and deliberation, we determine that the said petition shall be granted, and do hereby grant the same, and order that that portion of Dayton St. lying west of Locust Place be discontinued.

"Dated at Sea Cliff, L. I., November 15th, '97.
"[Signed]

D. A. Shaw, President.
"Geo. H. Brouwer,
"C. Sackett Chellborg,
"Chancy Coombs,
"Trustees.

"Filed Nov. 16, 1897.
"C. Sackett Chellborg, Acting Clerk."

No further or other order or determination in the matter of the proposed discontinuance of the portion of Dayton street west of Locust Place is set out or mentioned in the return, which purports to state all of the proceedings of the board of trustees in that matter.

We agree with the learned counsel for the relator that this was not such a determination as the statute requires, and that it is to be regarded as, in effect, no determination at all. The determination purports to have been made on November 15, 1897. No meeting of the board of trustees, however, was appointed to be held, or appears to have been held, on that day. The clerk of each village is made by statute the clerk of the board of trustees, and it is his duty to keep a record of their proceedings. Laws 1897, c. 414, § 82. If there was a meeting at which the alleged determination was made, the presumption is that it would have been recorded, and the record would now be before us. But no valid determination could be made except at a meeting of the board as such. The law takes no account of what the trustees may individually agree upon outside. As was said in an Ohio case, where a prior agreement of the members of a school board to award a certain contract was pronounced void:

"The board is constituted by statute a body politic and corporate in law, and as such is invested with certain corporate powers, and charged with the performance of certain public duties. These powers are to be exercised, and these duties discharged, in the mode prescribed by law. The members of the board have no power to act as a board except when together in session. They then act as a body or unit. The statute requires the clerk to record in a book to be provided for the purpose all their official proceedings. * * * The public, for whom they act, have the right to their best judgment after free and full discussion among themselves of and upon the public matters intrusted to them in the session provided for by the statute." Mc-Cortle v. Bates, 29 Ohio St. 419.

The records of the board of trustees of the village of Sea Cliff show, not that the board, as such, ever arrived at any determination with reference to the discontinuance of Dayton street, but that a paper was placed on the minutes, purporting to be such a determination, previously signed by the members at a time when the board was not in session, and when no meeting thereof was held. This is not the adjudication contemplated by the statute, and it has no validity or force.

The action of the board in assuming to make a determination to discontinue a street under the provisions of the village law is judicial in its character, and is, therefore, reviewable by certiorari. Starr v. Trustees of Rochester, 6 Wend. 564. The proceedings under examination in the case cited were for the widening of a street in a village, and the old supreme court said: "There can be no doubt that a certiorari properly lies in this case, directed to the trustees." A proceeding to discontinue a street seems to be as judicial in its nature as a proceeding to widen one; and the section of the village law under which it is instituted (section 145) classifies the laying out, altering, widening, narrowing, or discontinuing of streets altogether. The statute prescribes that proceedings for any of these changes which may be proposed shall be instituted by a petition, which shall be considered at a hearing to be given by the board at a meeting of that body, which is enjoined to "determine the matter" within a specified time. These provisions import judicial action. They deal with the exercise of a power quite different from that whereby the board of trustees of a village enacts village ordinances. The authority of the board in this respect is defined in another part of the village law (sections 89–93, inclusive). It is clearly legislative, and was evidently what the court of appeals had in mind in the passage quoted in the defendants' brief from People v. Board of Sup'rs of Queens Co., 131 N. Y. 468, 30 N. E. 488, where Earl, C. J., said that, if the action of the supervisors in passing an act providing for the grading, regulating, and macadamizing certain streets could be reviewed by certiorari, then "every ordinance and resolution of a village board of trustees" could be so reviewed. The court certainly did not mean by this language to deny the applicability of the writ to the review of a determination by a village board in a proceeding which is plainly of a judicial character.

But it is objected in behalf of the defendants that the relator has not shown himself to be an aggrieved person by the determination sought to be reviewed, in such a sense as to entitle him to

relief by certiorari. In his petition the relator alleges that by the proposed discontinuance of Dayton street he is deprived of the only direct way to reach the shore of Hempstead Harbor, which is but about two blocks distant from his dwelling, and that he "is compelled to make a considerable detour to the north in order to reach the same, and by reason thereof he is put to great inconvenience, and the value of his property is materially lessened." Assuming the truth of these statements, I think that the relator was an owner of land affected by the proposed discontinuance, within the meaning of section 146 of the village law. To bring him in the category of landowners thus affected, it was not necessary that the action of the village board in deciding to close and in closing the street should be such as would entitle him to maintain an action for damages. It was enough that the discontinuance would work injury to him in fact, as by reducing the value of his neighboring property. This gave him the right to notice of the proceeding,—which the board of trustees recognized,—and this gives him the requisite status to review the board's action by writ of certiorari. The alleged determination of the defendants should be annulled, with costs.

Determination annulled, with $10 costs and disbursements. All concur; CULLEN, J., in result.