## BISSELL v. VILLAGE OF LARCHMONT.

(Supreme Court, Appellate Division, Second Department.   January 11, 1901.)

EMINENT DOMAIN—STREETS—CHANGE OF GRADE—DAMAGES.

The extension of the level of a street by filling in the sides thereof as far as the front line of an abutting lot without raising the level of the street above the established grade does not constitute a "change or alteration," within the village law (Laws 1897, c. 414, § 159), providing that a change of grade to the extent of damages resulting therefrom shall be deemed a taking of adjacent property for public use.

Appeal from special term, Westchester county.

Petition by William W. Bissell against the village of Larchmont for the appointment of commissioners to determine damages for change of grade of a street. From a judgment for petitioner, and an order appointing commissioners to determine the damages claimed, defendant appeals. Reversed.

Argued before GOODRICH, P. J., and WOODWARD, HIRSCHBERG, and JENKS, JJ.

Alfred Opdyke (Carsten Wendt, on the brief), for appellant.
J. Addison Young, for respondent.

WOODWARD, J. The petitioner alleges that "the village of Larchmont is, and was at the times hereinafter mentioned, a municipal corporation," and that "section 159 of the general village law, being chapter 414 of the Laws of 1897, is, and at all times mentioned herein was, applicable to the village of Larchmont"; that the said village has exclusive control of the streets; that he is a resident of New Rochelle, and is the owner of certain premises situate in the village of Larchmont, and fronting on Addison avenue, known as "Lot No. 16"; that during the months of November and December, 1899, the said village of Larchmont changed the grade of said Addison avenue in front of his premises, which change consisted in the raising of the roadbed of said Addison avenue in front of the petitioner's premises to the extent of from three to four feet, which change of grade damaged and injuriously affected the land above described, and the use thereof. The remaining allegations of the petition are purely formal, and a commission of three persons is asked for under the provisions of the village law. The answer of the village of Larchmont admits the formal allegations of the petition, denies having sufficient information to form a belief as to the ownership of the said lot 16, and denies that the defendant had, in fact, changed the grade of said Addison avenue in front of the premises alleged to be owned by the petitioner. The issues joined were, therefore, aside from the ownership of the premises, whether any change of grade had been effected in Addison avenue at the place and time alleged; and, if so, whether by the due authority of the village. Upon the trial the learned court at special term found as a matter of fact that "during the months of November and December, 1899, the said village of Larchmont changed the grade of the said Addison avenue in front of the premises above

described, which change consisted in the raising of the roadbed of said Addison avenue, which change of grade damaged and injuriously affected the land above described and the use thereof." As a conclusion of law the learned court held "that the change of grade as aforesaid in the street known as 'Addison Avenue' in front of the petitioner's premises is in law a change of grade as contemplated by the statute," and that "the petitioner is entitled to have three commissioners appointed to determine the compensation to which he is entitled by reason of the said change of grade." The defendant excepted to this finding of fact and conclusions of law, and upon this appeal we are called upon to determine whether the court has erred in its disposition of the matter.

The ordinary meaning of the term "grade" is the amount of difference between grade line and a level or horizontal line, and to grade a street is to bring the surface of the street to the grade line. 14 Am. & Eng. Enc. Law, 1106, and authorities there cited. Therefore, when the village of Larchmont contracted with one Michael Decicco "for the construction of sewers and drains on a portion of the Boston post road, a portion of Chatsworth avenue, Addison street or avenue, and a portion of Collins avenue; also the outlet and the grading of Addison street and a portion of Chatsworth avenue,"— it may be understood as a contract to bring those streets and avenues to the established grade line, and not as an authority for changing the grade. This is made manifest by the provision of the contract that "portions of Chatsworth avenue and Addison street are to be graded as shown by the profiles of street filed in the office of the engineer and marked on the ground by him, the cross-sectional form of the streets to be made as directed by him." There is no suggestion in this of a change of the established grade, but a provision that the streets shall be brought to the grade line. There are no resolutions or ordinances of the village of Larchmont directing a change of grade. The contract, as we have seen, makes no such suggestion, and we are called upon, therefore, to examine the oral evidence to determine whether a change in fact has been accomplished under such circumstances that the village may be properly held to have taken private property in the contemplation of section 159 of the general village law (chapter 414, Laws 1897).

Alonzo Reynolds, a witness sworn in behalf of the petitioner, testified: That he had been employed as an assistant in surveying for a period of 6½ years, and that he had subsequently been employed by the defendant as a police officer. That he resigned as such officer on the 15th day of November, 1899. That he was familiar with the location of the premises of the petitioner. That he saw the work going on under the contractor, Michael Decicco. That he was familiar with the grade of Addison avenue as compared with the lot of the petitioner. That the lot in comparison with the street was practically level. That the situation was changed by the filling in front of the premises. That "I cannot say exactly how much the street was changed in front of this lot,—approximately a foot and a half. I saw the street in front of this lot after the

work was done. I did not measure it with a tape measure. I measured it with my eye. I observed a foot and a half." Being pressed for a definite answer, the witness testified that the street was raised a foot. On cross-examination he testified as follows: "Do you swear there was any filling done in the roadway,—that the roadway was raised at all? A. In front of Mr. Bissell's property the road has been altered by being raised. Q. Was it raised one foot? A. As nearly as I can tell. Q. Was it raised six inches? A. Using my best judgment. Q. No; positively no? A. By using my best judgment, I say a foot. Q. It was raised a foot in front of Bissell's lot? A. Yes, sir. Q. What did the filling consist of? Was it done in the middle or the sides? A. Most of it was done on the side." He further testified that the street was 60 feet wide, and that when he first saw it it was not filled in to the full width of the street. Francis J. Clarke, a dealer in real estate, sworn in behalf of the petitioner, testified: That he knew the parties. That he was familiar with the street, and with the location of the petitioner's premises, and with real-estate values in the village of Larchmont. That in reference to Addison avenue, on his observation, he did not think "the road was its original width. There used to be a couple of planks down for a walk. They were about one foot from the level of the lot. At the present time the road has been raised about one foot and ten inches." Asked whether this was "in the middle of the road or on the side," witness answered, "On the side." Asked how it had been changed in the middle, the witness replied: "It has a slight crown. I could not tell you that without measuring. It has been raised somewhat in the middle. Formerly it slanted down. I mean to say that the original two planks that were there were level with the road. They were on the side of the road." Asked, "What was done that you saw in December last?" the witness replied: "The planks were taken away, and the whole business was raised; both the road and what had been a vacant place under the planks." That the whole side of the road was raised. That the middle of the road was raised. That the side of the road from the planks out to the property line was raised a foot or ten inches. That the middle of the road was raised from ten inches to a foot. On cross-examination it appeared that the witness was the agent of the petitioner to sell this property, and he insisted that the grade was changed by being raised one foot. This is the evidence of the petitioner upon this point, which is the only one important to be considered here. The defendant placed its engineer upon the stand, who testified: That he had been a civil engineer for 10 or 15 years. That he was such in 1898, and that in the early part of that year "I made surveys for the village of Larchmont of what is known as 'Addison Avenue.' I have a memorandum of what the grade of Addison avenue was in front of lot 16 in 1898 and 1899, both, and in 1900 also. I have the original levels in front of lot 16 as they stood in 1898. I also have them in the first part of 1900." Asked, "What was the grade in 1898, as shown in your survey?" witness answered: "You mean in figures or as to change? Q. As to change. A. There was none. They were absolutely the

same within less than one inch. The road in Addison avenue was not altered in any particular that I could find with the level. I am testifying absolutely in regard to lot No. 16 at the same points as held on a level in 1898." On cross-examination this witness testified that his testimony referred to the road grade; that there was a little material filled in on the side of the street in front of Mr. Bissell's property. Michael Decicco testified that he did some contract work on the streets of the village of Larchmont under the contract in evidence. Asked if he did any grading whatever in Addison avenue in front of the Bissell lot, he replied: "Not that I know of, with the exception of the sewer. I laid a sewer in that street." Asked if he changed the grade of the street by raising or lowering it, the witness answered: "No, sir. The only change that we made we had a deep cut, and some surplus stuff, and there was a place on the side of Addison avenue where there was a plank walk, and there was a very bad place in there. It was a bad place, and by authority of the board of trustees we got an order to widen out that piece. I could not tell you whether it raised the side of the road above the grade of the road in the center. We had so much stuff left from the sewer there on the middle of the road, and we graded down to the old grade, and probably there was a lot of stuff left there." On cross-examination this witness testified that he filled the side of the road in front of this property to the extent of a foot and a half, or a little over. If we assume that the grade of Addison avenue had been established at the time the work of constructing the sewer upon the street was undertaken, it appears clearly that the full width of the street had not been brought to the grade line; that there was a low spot in front of the petitioner's property, making it necessary to raise his sidewalk at least 12 inches above the level of the ground in order to conform approximately with the level of the traveled roadway. The evidence, it seems to us, is conclusive that the center of the traveled roadway was not materially changed, and it was within the rights of the municipality to fill up this depression, and to bring the highway to the common grade level at any time. There is no evidence that the profile of Addison avenue referred to in the contract for these sewers made any change in the grade of this street at the point mentioned in the petition, and the evidence is overwhelming that no such change was actually made, except in so far as the excess of material after the sewer excavation was deposited in front of the petitioner's property, bringing it up to approximately the common level of the traveled portion of the highway. O'Reilley v. City of Kingston, 114 N. Y. 439, 445, 21 N. E. 1004; Whitmore v. Village of Tarrytown, 137 N. Y. 409, 415, 33 N. E. 489, 490. In the case last cited the court say:

"The grade of the street having been established in 1882, it was not altered or changed by the cutting down of the embankment on either side of the street for the purpose of making the whole street conform to the grade thus established. Such an improvement of a street is not, within the fair meaning of the statute, a 'change or alteration' of the grade thereof."

The principle is not different because in the case at bar there was a slight fill instead of an excavation, and we are of opinion that it

was error to hold that the petitioner had brought himself within the purview of the statute.

The judgment appealed from should be reversed, and the order appointing commissioners should be vacated. All concur.