(63 App. Div. 286.)

ARCHER v. CITY OF MT. VERNON.

(Supreme Court, Appellate Division, Second Department. July 25, 1901.)

1. MUNICIPAL CORPORATIONS—CHANGE OF GRADE.
　　The city charter of Mt. Vernon (Laws 1892, c. 182, §§ 180, 182–184, 186) provides that "the common council shall have power to establish the grade, construct, make," and repair streets, etc., and provides that the common council may provide for such improvements, and assess the expense on the land benefited thereby, and specifies proceedings therefor. Section 187 authorizes the common council to change the grade of any street, by a vote of three-fourths of its members, on a written petition of any party interested, and requires a profile showing the intended alteration to be filed in the office of the city clerk, and requires notice of the petition and profile to be published in a newspaper, fixing the date when objections may be made. Held, that proceedings to change the grade of an established city street could only be had under the latter section.

2. SAME.
　　Acts 1869, c. 906, authorized certain towns to regulate, grade, and improve a certain highway, and commissioners were named therein, who graded the road. Thereafter a portion of such road became a street in the city of Mt. Vernon. Held to create and establish a grade of the street which would require proceedings for the change thereof to be brought under provisions of city charter authorizing and prescribing the procedure for a change of grade, and not under sections authorizing the grading of city streets.

3. SAME—APPEAL.
　　Where a proceeding to vacate a special municipal assessment for changing the grade of the street on the ground that no damage is allowed to a property owner is tried on the theory that there was no change of established grade, the defense that there was no building on plaintiff's lots cannot be raised for the first time on appeal.

4. SAME—REPAVING.
　　Under a city charter providing that the city council may contract for the paving and repaving of city streets, and the expense thereof, except

for repaving, shall be assessed upon the property benefited thereby, the expense of repaving a city street cannot be assessed upon the abutting property owners, but must be paid by general assessment.

Appeal from special term, Westchester county.

Action by John Archer against the city of Mt. Vernon to vacate a special assessment. From a judgment in favor of plaintiff, defendant appeals. Affirmed.

Argued before GOODRICH, P. J., and JENKS, WOODWARD, HIRSCHBERG, and SEWELL, JJ.

William J. Marshall, for appellant.
Arthur M. Johnson, for respondent.

GOODRICH, P. J. This action was brought to vacate two assessments upon plaintiff's lots on Central boulevard, in the city of Mt. Vernon; part of the assessment being for the regrading and repaving of that highway and Columbus avenue. The plaintiff claimed that the common council, in taking the proceedings which resulted in the assessments, did not comply with the provisions of section 187 of the charter of the city of Mt. Vernon; that it was therefore without jurisdiction to alter an established grade; and consequently that the assessments are void. The court at special term rendered judgment as prayed for, and the city appeals.

We are to construe the meaning of the words "established grade," as used in the charter, in connection with an assessment upon abutting property owners for a change of the grade of a highway as it existed previously to the charter. There is abundant authority for the doctrine that a statute delegating local power to charge the property of individuals with the expense of local improvements must be strictly pursued, that any departure in substance from the formula prescribed by the statute vitiates the proceedings under it, and that what the legislature has directed to be done the courts cannot declare immaterial, or the steps prescribed merely directory, and so cannot hold that the omission to take any such step does not vitiate the proceedings. Merritt v. Village of Portchester, 71 N. Y. 309, 27 Am. Rep. 47; Stebbins v. Kay, 123 N. Y. 31, 25 N. E. 207. The charter is chapter 182 of the Laws of 1892. Section 180 reads:

"The common council shall have power to establish the grade, construct, make, grade, regulate and repair streets, highways, sidewalks, bridges, sewers and aqueducts, or cause the same to be done."

Section 182 provides:

"The regulating, reregulating, grading, regrading, paving, repaving and graveling of streets and highways, or any part thereof; the completion of the regulating and grading of all streets or highways, or of any part thereof, * * * may be contracted for by the common council, and the expense thereof, except for repaving, and two-thirds of the expense of paving, shall be apportioned and assessed upon the several lots of land benefited thereby by the assessors in proportion to the benefit which the same shall derive from the improvement. * * *"

Sections 183 and 184 require the common council to prepare and file plans, fix a district of assessment, publish notice, make a contract

for the work, report the assessment and assessment district, hear objections of interested parties, and, when proper, correct the report. Section 186 reads:

"Whenever the common council shall determine to regulate, reregulate, grade, regrade, or pave any street or highway, or any part thereof, it may direct a curb to be set, and a gutter to be made on each or either side of such street or highway, and the expense therefor shall be assessed by the assessors with the expenses of regulating, reregulating, grading, regrading or paving such street or highway in the same report and assessment upon the lots of land only that shall front upon such street or highway, and in proportion to their respective frontages thereon."

It should be observed that this section relates only to the setting of gutters and curbs, and assessing the expense thereof on abutting lots.

The sections thus quoted conferred upon the common council the power to establish the grades of all public streets and highways, but only where there was not already an established grade. This is evident from the language of section 187, which reads in part as follows:

"The common council shall have power, on the written petition of any party interested, to alter the grade of any street or highway, or of any part thereof. Before determining to make such alteration it shall cause to be made and deposited in the office of the city clerk a profile showing the intended alteration, and cause to be published in one or more of the official city newspapers once in each week for two successive weeks, a notice that such petition has been received and such profile so deposited, setting forth their intention to make such alteration, and requiring all persons interested to present their objections, in writing, to the common council, at a time and place to be mentioned therein, not less than two weeks from the first publication thereof. The common council may, at any time within one year thereafter, by a vote of three-fourths of all its members, so alter such grade."

Then follows a provision for ascertaining the damages to any building which has been previously erected "with reference or to conform with the previously established grade."

It is evident that if there was not at the time of the proceedings of the common council an already established grade of the highway, avenue, or boulevard, the proceedings were properly instituted under sections 180 to 186; otherwise, they should have been instituted under section 187. From the sections referred to, it is manifest that it was the intention of the legislature to confer upon the common council the power, on its own motion, to establish grades, and to charge a portion of the expense thereof once only upon the land benefited thereby, but whenever there was an established grade it could be changed only on the petition of any party interested. We are thus brought to the question whether at the time of the passage of the charter there was an established grade of the Old White Plains post road. In 1869 an act was passed by the legislature (chapter 906) "to regulate, grade, widen, gravel and improve" the Old White Plains post road, of which the portion of Columbus avenue now in question formed a part. The act authorized the towns of Eastchester, Scarsdale, and White Plains to regulate, open, grade, work, and macadamize the road. In 1872, in pursuance of that act, that portion of the road now known as

"Columbus Avenue" was graded to the width of 49½ feet, and macadamized to the width of 30 feet; and the expense thereof was paid by the issue of bonds, which have been paid partially by taxation upon the territory then included in the town of Eastchester, the defendant's predecessor, and partly by the city. The plaintiff's lots were within the town of Eastchester. In 1892 Central boulevard was graded and paved by the Corcoran Manor Association, then the owner of a large tract of adjacent land. The association in 1894 dedicated the boulevard to the city as a public street, and, such dedication having been accepted by the city, the boulevard became a public street. Plaintiff's lands abut this boulevard. In 1898 the common council of the city passed a resolution adopting plans, profiles, and specifications for the regulation, grading, paving, etc., of the boulevard, and fixing a district of assessment, and a contract was made for the work. Under this contract the grades of Columbus avenue and Central boulevard were changed, and the expense thereof included in an assessment upon the plaintiff's lots. All of these proceedings were taken under sections 180 to 186 of the charter, and not under section 187. The court held that at the time of the resolution, contract, and working, the avenue and boulevard were public streets of the city, and that each had at that time an established grade, which was altered by the work in question, and that such work should have been done under section 187 of the city charter. The city contends that there was no established grade at the time of the resolution, and that the work was properly done and the assessments imposed under sections 180 to 186 of the charter. This difference involves the simple question whether the grades of the avenue and boulevard had been established previously to 1898. As to Columbus avenue, which was a part of the Old White Plains post road, there can be no question. The act of 1869 conferred upon the commissioners therein named the power to grade the road. The evidence shows that they graded the road, and this was the establishment of grade under legislative authority. We must assume that when subsequently the charter was passed the legislature had in mind its previous enactments, and intended to grant to the city the power to establish grades and assess the expenses thereof upon adjacent lands, under sections 180 to 186, only in cases where no grade had been previously established. The power to change established grades was defined in section 187. It is unnecessary to express an opinion whether the grade of Central boulevard was established by the city's acceptance of the street in its graded and paved condition. The case of Aldrich v. Board, 12 R. I. 241, cited by the corporation counsel, seems to be direct authority against his own contention. It there appeared that the highway in question had been graded by surveyors under their general authority in 1847. At that time the board of aldermen had no power to establish a grade. This power was afterwards conferred upon the board by an act of the legislature in 1866. The court said (pages 242, 243) that it was contended by the board—

"That there had been no change, but merely the establishment of a grade where none had previously existed; the grade created in 1847 being, as they

contend, no grade, in contemplation of law, because not established by the board of aldermen. Their contention is that under the statute there can be no grade of any street or highway unless it is established in the city of Providence by the board of aldermen, * * * but we think it [the board] is mistaken in claiming that there can be no grade existing unless it has been established in the city of Providence by the board of aldermen. * * * After a grade has been established, and houses have been built to it, in the faith that it is going to be permanent, the same evils result from changing it, by whatever authority it may have been originally established."

The case at bar has similar conditions. Commissioners were authorized by the legislature to grade the Old White Plains post road, and they did so, just as surveyors had graded the Providence road. The subsequent grant of authority to the common council of the defendant to "establish the grade" did not confer authority to alter a grade and assess the expense otherwise than is provided in section 187, just as the Rhode Island court said that to hold that at the time chapter 310 of the Laws of 1859 was passed (that being an act to give damages for a change of grade) highway grades could exist only when established by the aldermen would have rendered the chapter utterly nugatory.

In Farrington v. City of Mt. Vernon, 166 N. Y. 233, 59 N. E. 826, also cited by the corporation counsel, the court held that sections 180 to 186 conferred upon the city the power to establish the grade, and that the proceedings were properly taken thereunder. Then follows this language, differentiating that case from the one at bar:

"Manifestly, that section [section 187] has no application to this case, where the defendant has constructed or repaired one of its streets in pursuance of the power conferred by sections 180 and 182 of that act. The change that was made in the grade of North Fourth avenue was to level its surface only so far as was necessary to enable the city properly to construct the street. There was no proof that any grade had been previously established."

Aside from the question whether the grade was established under the act of 1869, we have authority in Folmsbee v. City of Amsterdam, 142 N. Y. 118, 36 N. E. 821, as to what constitutes establishment of a grade, and that a grade can be established by usage. In that case, Earl, J., said (pages 124, 125, 142 N. Y., and page 822, 36 N. E.):

"It is said, however, on the part of the defendant, that the grade of this street had never been previously established, and therefore that this was not a case of a change of grade. We think, upon the undisputed facts in this case, that the grade of the street had become established. It had been used as a public street for more than forty years. Houses were built compactly on both sides, conforming to the grade of the street as it then existed; and the street was graded and improved by the city and its predecessor, the village of Amsterdam. Sidewalks had been built, under direction of the municipal authorities, upon grades given by them; and thus it is clear that the grade had become established by long usage, and by the acquiescence and recognition of the village and the city. The claim that the grade of a street could become established, within the meaning of the statute under consideration, only by a formal ordinance of the municipality, finds no sanction in the language used. There are many streets in cities and villages the grades of which have not been established by ordinances. They have either been left in their natural condition, or worked and improved from time to time by the municipal authorities without the formal establishment of any definite grade; and when upon such streets buildings are erected, conforming to the existing grade, if that grade be changed the mischief arises for which the

provision in section 95 [Laws 1885, c. 131] was intended to provide. Without referring minutely to the evidence in this case, we think sufficient appears to show that the grade had become established prior to 1887, when the defendant caused the change of the grade of which the plaintiff complains. There are precedents for the conclusion that the grade of a street may become established by usage, acquiescence, and recognition, without any formal ordinance on the part of the municipality. McCall v. Village of Saratoga Springs, 9 N. Y. Supp. 170; Bartlett v. Village of Tarrytown, 8 N. Y. Supp. 739; O'Reilley v. City of Kingston, 114 N. Y. 439, 21 N. E. 1004; Whitmore v. Village of Tarrytown, 137 N. Y. 409, 33 N. E. 489. Therefore, as there was no petition for changing the grade of this street as required by the section of the statute, the defendant was wholly without authority to inaugurate the change; and its interference with the street was wrongful and illegal, and it became responsible to the plaintiff for any damages thereby caused to his property."

We thus reach the conclusion that when the proceedings of the common council were instituted there was an established grade on Columbus avenue, and consequently that the proceedings were illegally taken under sections 180 to 186, and could be taken only under section 187. It is not a mere question of regularity, but of result, according to the sections under which such proceedings are instituted. Under section 187 the owners of buildings have certain rights to compensation. Under the other sections the expenses may be assessed upon the lands benefited by the improvement, and under the proceedings the plaintiff's lots have been assessed. Neither does it matter that the plaintiff is not the owner of a building. His lots have been burdened with an unauthorized assessment under proceedings illegally instituted. The question is not whether an owner of abutting land on which there is no building can have damages of the city. Probably he could not. The point that there was no building on the plaintiff's land was not raised at the special term, and it is too late to raise it now. The case was tried on the theory that there was no change of any established grade, and we must dispose of the appeal on that theory. Sears v. Wise, 52 App. Div. 118, 60 N. Y. Supp. 1063; Drucker v. Railway Co., 106 N. Y. 157, 12 N. E. 568, 60 Am. Rep. 437. If the point had been raised, it might have been met, possibly, by proof that there were buildings along the line of the avenue or boulevard, but we are without evidence upon the subject.

Another objection to the assessment is that it includes the expense of repaving Columbus avenue. That highway, while it was the old post road, was paved pursuant to the act of 1869. The clear intention of section 182 is that, where a road has once been paved, the expense of repaving it shall not be assessed upon abutting lots alone, but upon the property in the city generally. The inclusion of this expense of repaving was therefore illegal. It was held in Poth v. City of New York, 151 N. Y. 16, 45 N. E. 372, that where it appears that an assessment sought to be enforced against a property owner is made up of different items or elements, all blended together, some of which are illegal and others legal, he may resist the payment of the whole, in the absence of some statute which modifies the general rule. The special term found that the portion of the expenses for the repaving of Columbus avenue and the alteration of grades was included in the assessment upon the plaintiff's

lots (and this related to the grade of both avenue and boulevard), and formed a substantial part thereof, but that as it did not appear what part, and as there was no provision in the charter for the modification or reduction of such assessment, the entire assessment was illegal and void. We therefore reach the conclusion that the judgment is correct, and should be affirmed.

Judgment affirmed, with costs. All concur.