HYLAND et al. v. PRESIDENT AND TRUSTEES OF VILLAGE OF OSSINING.

(Supreme Court, Trial Term, Westchester County.   November 30, 1907.)

1. MUNICIPAL CORPORATIONS—CLOSING STREET—NOTICE OF PROCEEDINGS.

The closing of a street at its intersection with another road and the change of grade of a portion of the road, without service of notice required by Laws 1906, p. 474, c. 242, on the owners of the land, all of whom were of full age and had resided on the premises for many years, were void.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 36, Municipal Corporations, § 780.]

2. SAME—DUTY OR OFFICERS.

Where proceedings were instituted by village officers to close a street and change the grade of a road, the village trustees were bound to know who were the owners of the premises affected by the change and to exercise more care than a mere examination of the assessment roll to ascertain them and give the required notice.

3. STATUTES—CONSTRUCTION.

Laws 1906, p. 474, c. 242, authorizing village trustees to change the grade of a highway and to close streets on notice to property owners affected, must be strictly construed.

4. MUNICIPAL CORPORATIONS—CHANGING GRADE OF STREET—PUBLIC HEARING.

Where a change of plan for the improvement of a street is contemplated by a board of village trustees, it should be made at a public hearing before the board, where a full hearing of persons whose property was affected could be had, after notice.

5. SAME—INDIVIDUAL ACTION—RATIFICATION.

A meeting by the road committee of a board of village trustees and the engineer in charge of an improvement, at which a change in the plan was agreed on, though subsequently ratified by the board, was without legal authority, and gave the village officers no right to improve the street on the amended plan.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 36, Municipal Corporations, § 803.]

6. SAME—STREETS—CHANGE OF GRADE—AUTHORITY OF VILLAGE.

Since the ordinary meaning of the term "grade" is the amount of difference between grade line and a level or horizontal line, and to grade a street is to bring the surface to the grade line, a village charter authorizing it to grade its streets did not include permission to erect a wall in the street to alter its grade, without ordinance or resolution, nor authorize the closing or withdrawal of any part of the street from public use.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 36, Municipal Corporations, § 718.]

7. SAME—ABUTTING OWNERS—OWNERSHIP OF STREET.

Adjoining landowners own the land to the center of a street, subject only to the easement of the public to the right of way, and therefore are entitled to exercise all ordinary remedies for injuries to the freehold.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 36, Municipal Corporations, §§ 1441. 1447, 1448, 1450.]

8. SAME—OBSTRUCTIONS IN STREET—NUISANCE.

The unauthorized erection of a wall in a street in front of plaintiff's premises, on the sidewalk and street, by village officers, to consummate a plan for improvement of the street, constituted a nuisance.

Action by William Hyland and others against the president and trustees of the village of Ossining for an injunction to restrain the

closing of a highway and the change of grade of a street and for damages. Judgment for plaintiff.

Smith Lent and Edgar L. Ryder, for plaintiffs.
Frank L. Young, for defendants.

MORSCHAUSER, J. The revised act under which these defendants continue to conduct their municipal affairs is chapter 242, p. 474, of the Laws of 1906. There have been amendments, but such did not affect that part of the act relating to this action. A petition was presented to the defendants, asking for the altering, widening, and change of alignment of a portion of the Secor Road, in said village, and the closing of Main street at its intersection with the west side of Secor Road. The petition was filed on the 16th day of July, 1907, with a map thereto. After some adjournments an order was made by the defendants' trustees, wherein it was ordered that the petition be granted and that Secor Road be altered or widened and the alignment changed, and Main street be closed at its intersection with the west side of Secor Road therein, in accordance with the description and specifications contained in said petition, and that the parcels of land described in the petition be acquired therefor in the manner provided by the charter of the village. The plaintiff William Hyland appeared with others upon a hearing and filed objections before the order was made. The defendants, after the order was made, passed various resolutions for the purpose of erecting the abutment and closing Main street at its intersection with Secor Road. A contract was entered into and the work was begun, proceeding until this action was commenced by the plaintiffs against the defendants on October 21, 1907, when an injunction was obtained pendente lite.

The plaintiffs, by their complaint, after alleging that they are the owners in fee and in possession and occupying certain premises situated on Main street, and continuing along Main street for a distance of more than 150 feet, allege that they (the plaintiffs) are the owners to the center of the street, that such highway has been such for more than 150 years, that the premises are of the value of $15,000, and that the defendant village is a municipal corporation organized under the law mentioned. The complaint further alleges that the defendants, without any right or authority, entered upon the highway and dug a trench or ditch across the highway, describing the ditch to be several feet in depth and width, and setting therein certain uprights and cross-pieces of timbers and closing up the highway, for travel, and that the defendant intended to build a solid wall of masonry and carry such wall of masonry to the height of 8 feet above the surface, and threatened to continue such excavation along the lands of the plaintiffs on Main street for a distance of more than 100 feet, and intended to fill in such excavation with a wall of solid masonry and to permanently maintain such a wall; that the defendants rendered it impossible to use it for public travel, and have deprived the plaintiffs of access to a barn on the westerly side of the premises, and that, if the defendants are permitted to carry out the work, the plaintiffs' dwelling house, as well as the barn and premises, will be

shut off from the free use of said street and rendered valueless, and that no proceeding of any kind had been legally instituted to close the highway, and no compensation made to owners of property abutting on the highway, and that no public purpose requires the closing of the highway; that the acts of the defendants were malicious and in wanton disregard of the plaintiffs' rights, and that if such acts are permitted the plaintiffs will suffer irreparable injury. The plaintiffs ask that the defendants be restrained from continuing these acts, and be enjoined from closing said approach, and be compelled to restore said Main street to its former condition. They ask for damages in the sum of $1,000.

The defendants, denying the several allegations of the plaintiffs' complaint, except that no compensation was made to the plaintiffs or other persons abutting on the highway, allege that proceedings have been taken by the defendants as provided by law to close the highway described in the complaint, and that public purpose and necessity require the closing of the highway. As a defense, the defendants allege that it is planned to change the grade of Secor Road, which plan for a change has been duly adopted by the defendant village, providing for the construction of a new approach from Secor Road to Main street, and taking no property of the plaintiffs in changing the grade of the aforesaid streets in the manner provided by law. The plan adopted by the defendant was to erect a wall commencing some distance below Main street, in Secor Road, and continuing in a northerly direction for more than 150 feet; the height of the wall varying at the end, but in the center, or at the part where it crosses Main street, or where Main street is intersected by Secor Road, to be from 4 to 5 feet in thickness at the base, becoming narrower at the top, and to be from 5 to 6 feet in height. It would be built of concrete and would close the road at this point. The proposed wall would continue in its course in a northerly direction after reaching the sidewalk in front of plaintiffs' premises, and, when finished, would be of such height that the top thereof would be on a line with the top of plaintiffs' front door, and continuing then in the same direction until it reached the barn on plaintiffs' premises, where the wall would be 4 feet high, and the plaintiffs' premises would then be inclosed along the line in front of plaintiffs' premises at the point indicated. An iron rail was to be placed on the top of the masonry wall. The defendants, by their engineer and road committee, changed the plan and made a new plan, laying out a street to begin in Secor Road below the abutment on the south and then proceed in a northerly direction and make an abrupt turn into Main street; the road to be 18 feet in Main street and 20 feet wide at the beginning of Secor Road. This was designed to be used for vehicles, and steps were to be made over and on the abutment on Main street for the use of pedestrians, and the wall, instead of being erected on plaintiffs' premises, was to be placed by the new plan on the sidewalk in front of the premises. This plan, the defendants claim, although changed by the engineer and road committee on the ground, was adopted by the defendants after this action was commenced, and the defendants claim that they were acting within their legal rights when they did this. The work was

begun, and it has so far progressed that the wall is partially completed on Main street, with an opening reaching to the sidewalk in front of plaintiffs' premises for the purpose of erecting the wall.

By stipulation of the parties, it was requested that I should view and examine the premises. The erection of this proposed wall in the manner contemplated will eventually destroy the use and enjoyment of plaintiffs' premises, unless some radical changes are made. The defendants claim that these changes were necessary at this place because of accidents happening and likely to happen at this intersection. I cannot find this from the evidence. The defendants undoubtedly acted and carried out this plan with an honest intention to serve the village and change the condition of the streets at this intersection, with a purpose of bettering the highway, and without any malice or wanton disregard of the plaintiffs' rights, and believing that they had a legal right so to do, and that it was for the best interest of the village. I think, upon proper application, the change contemplated by the defendants could be eventually brought about; but the proceedings taken by the defendants were not taken pursuant to law.

The application and order was for the purpose of altering, widening, and changing the alignment of a portion of Secor Road and closing the highway at the intersection of Secor Road with Main street. The defendants failed to comply with the statute, which requires service of notice upon the owners of the land, all of whom were of full age and resided on the premises for many years. The owners were not served with notice. The only person served, if he was served at all, was William Hyland, the father, and I am not assuming too much when I infer from the facts adduced upon the trial that at the time of the issuing of the notice the trustees knew the plaintiffs to be the owners of the land and premises which had been assessed to William Hyland. Ossining being a village, I must infer from the evidence that the trustees knew who were the owners of these premises. They could not guess. They were bound to exercise diligence; but it seems all that was done was the examination of the assessment roll. When a proceeding of such importance is to be instituted, care should certainly be exercised, so that no person be injured or deprived of property without due notice. There is no proof of service of notice on the owners of the property affected by these proceedings; and the plaintiffs, with the exception of the plaintiff William Hyland, are in the same position as if nothing had been done after the filing of the petition. The statute in this respect must be strictly construed. Archer v. City of Mt. Vernon, 63 App. Div. 286, 71 N. Y. Supp. 571.

The new plan, or its approval thereof, was not adopted by the defendants until October 30, 1907, and after this action was begun. For members of a board to ratify in meeting acts previously committed by members of that board as individuals is hardly to be regarded as a legal proceeding, especially when notice has not been given to the persons whose property rights were to be affected. The petition and plans, as originally proposed and adopted, were therefore never changed. The order making it still remains, and has never been revoked. Such a change of plan as was attempted to be made by defendants' trustees should be made at a public hearing before the

board, where a free and full discussion and consideration of such a public matter could be had, giving plaintiffs an opportunity to be heard after receiving proper notice. A meeting by the road committee and the engineer in charge, and their action, although ratified by the board, was without legal authority and gave defendants no right to do the acts complained of. As was said by Mr. Justice Bartlett in People ex rel. Mershon v. Shaw, 34 App. Div. 64, 54 N. Y. Supp. 220:

"The law takes no account of what the trustees may individually agree upon outside. As was said in an Ohio case, where a prior agreement of the members of a school board to award a certain contract was pronounced void: 'The board is constituted, by statute, a body politic and corporate in law, and as such is invested with certain corporate powers, and charged with the performance of certain public duties. These powers are to be exercised, and these duties discharged, in the mode prescribed by law. The members composing the board have no power to act as a board, except when together in session. They then act as a body or unit. The statute requires the clerk to record, in a book to be provided for the purpose, all their official proceedings. * * * The public, for whom they act, have the right to their best judgment, after free and full discussion and consultation among themselves, of and upon the public matters intrusted to them, in the session provided for by the statute.' McCortle v. Bates, 29 Ohio St. 419, 23 Am. Rep. 758."

In People ex rel. Johnson v. Whitney's Point, 32 Hun, 514, Mr. Justice Learned said:

"The law gives them no right to change the route specified in the petition. They may 'deny the petition,' or approve it, etc., and declare their intentions to 'make said improvements.' It is no answer to say the change made was small and did no harm to any one. This would be to say they need not follow the direction of the statute; that they may disregard its requirements. Here was a statute with special provisions directing what steps should be taken and how they should be taken. If not followed, the trustees were without jurisdiction. * * * The said law in which the trustees were authorized to proceed must be looked to, and its requirements followed."

This case was affirmed in 102 N. Y. 85, 6 N. E. 897. Mr. Justice Earl, writing the opinion, said:

"If upon the hearing, or at any time after presentation of the petition before final action thereon and before the road was actually laid out, the trustees found it was necessary to change the line or route or to take other land not specified in the petition, then the proceedings should have been abandoned, and a new petition filed, and proceedings commenced de novo. It is true that the variation here is not great; but if a change in the center line of the road for one rod can be justified, if the trustees had jurisdiction to make such change, then it is difficult to perceive how their power could be limited."

The application was made and the order granted upon a petition that Secor Road be altered or widened and the alignment thereof be changed, and that Main street be closed at the intersection with the west side of Secor Road therein, in accordance with the description and specifications mentioned in the petition. The defendants claim that, if this procedure had not been in proper form, the village could change the grade without formal resolution or ordinance fixing the grade, and that the change of plan by the engineer and road committee and its subsequent adoption by the village board were within the powers vested in them, and no notice was required to be given. As was said in Whitmore v. Village of Tarrytown, 137 N. Y. 413, 33 N. E. 490:

"Before it can be said that the grade has been changed or altered, there must generally have been some formal action by resolution or ordinance of the village fixing the new grade. There may, however, be exceptional cases where, under peculiar circumstances, a new grade may be established by directions given or by acquiescence. According to the ordinary understanding of the language used in the act, there is implied some definite action, or at least some definite acquiescence, fixing a new grade to which a street is either to be raised or lowered. If the street commissioner in a village should go upon a street and from time to time take a few loads of earth from one place and deposit it in another, or for the purpose of repairing and improving a street should cut it down in one place and raise it in another, or dig out earth in the sides of the street for the purpose of widening the traveled bed thereof, by all these acts, although in the process of years they may work an actual change in the grade of the street, the grade is not changed or altered within the meaning of the act. Could an adjoining owner, every time the street commissioner takes a yard of earth out of the street at one place and deposits it at another, thus causing an appreciable damage to his abutting property, institute proceedings under this act for the appraisement of his damages? Such a construction of this act might involve a village in constant litigation with numerous owners of real estate along streets which are from time to time improved."

The same conditions do not hold in this case. Nowhere in the minutes of the board or in the proceedings has the question of the change of grade been mentioned, and it seems, and I infer, that it was an afterthought. The grades of Secor Road and Main street had been fixed for many years, except with slight changes that would ordinarily take place in the filling in of a roadway or the removal of material therefrom for improving its condition. The grading provision, as set forth in the charter of the defendant village, gave it authority for grading, but gave it no authority to withdraw any part of the highway from public use, or to erect any nuisance thereon, or to close a highway or take any part of it.

"Grade" is defined by Mr. Justice Woodward, in the Matter of Bissell, 57 App. Div. 62, 67 N. Y. Supp. 963, citing 14 Am. & Eng. Enc. of Law (2d Ed.) 1108, where he says:

"The ordinary meaning of the term 'grade' is the amount of difference between grade line and a level or horizontal line, and to grade a street is to bring the surface of the street to the grade line."

This, like other provisions of law, must be construed in a reasonable manner. To construe the grading provision in defendant's charter as permitting the village to carry out the design contemplated by the erection of this wall without ordinance or resolution, and simply upon the ratification of an act of the highway committee and engineer, would, in my opinion, be far beyond the power contemplated by the Legislature.

The plaintiffs own the highway to the center of the street, subject to the easement of the public to the right of way. Van Winkle v. Van Winkle, 184 N. Y. 193, 77 N. E. 33; Holloway v. Southmayd et al., 139 N. Y. 405, 34 N. E. 1047, 1052; Platt v. Village of Oneonta, 88 App. Div. 192, 84 N. Y. Supp. 699, citing a number of cases. Kent, in his Commentaries (volume 3 [14th Ed.] *432), says:

"The presumption is that the owners of the land on each side go to the center of the road, and they have the exclusive right to the soil, subject to the right of passage in the public. Being owners of the soil, they have a right to all ordinary remedies for the freehold."

The unauthorized erection of the wall in front of plaintiffs' premises on the sidewalk and street is a nuisance. Ackerman v. True, 175 N. Y. 353, 67 N. E. 629; City of New York v. Knickerbocker Trust Co., 104 App. Div. 228, 93 N. Y. Supp. 937; Holloway v. Southmayd, 139 N. Y. 390, 34 N. E. 1047, 1052. I think $100 will be a fair and equitable amount to allow to plaintiffs for damages suffered. The plaintiffs are entitled to judgment asked for in the complaint, with $100 damages, besides costs. I will not make an additional allowance.

Settle findings on notice.