(78 Misc. Rep. 2.)

## SCOTT et al. v. McCLUNG et al.

(Supreme Court, Special Term, Orange County.    October 18, 1912.)

1. MUNICIPAL CORPORATIONS (§ 280*)—STREET IMPROVEMENTS—ESTABLISHMENT OF GRADE.

   In 1835 the trustees of the village of N. adopted a grade for a part of G. street, and in 1890 the city council, the city having succeeded to all the rights and liabilities of the village, passed two resolutions, one establishing the grade of a part of the street, as shown by a "profile of the grade," and another for another part of the street, establishing a "grade line on both sides of the street." In 1910 another resolution established the grade line of the center and both sides of another part of the street. These resolutions covered almost the whole length of the street, and the street was graded to the grades so established, and grades were from time to time given to abutting owners, in order that they might build sidewalks and otherwise improve their property. Held, that the street grade had been established, so as to preclude a change, except on petition of the owners of a major part of the abutting property.

   [Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 740–743; Dec. Dig. § 280.*]

2. MUNICIPAL CORPORATIONS (§ 280*)—CHANGE OF GRADE OF STREETS.

   If the proposed levels according to which a street is to be paved will tend to make it generally higher or generally lower than it is at present or has been in the past, the paving will amount to a change in grade.

   [Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 740–743; Dec. Dig. § 280.*]

Action by J. Bradley Scott and others against Benjamin McClung and others. To enjoin the awarding and execution of a contract for street paving. Injunction made permanent.

See, also, 135 N. Y. Supp. 311.

Howard Thornton, of Newburgh, for plaintiffs.
Graham Witschief, of Newburgh, for defendants.

TOMPKINS, J. When this case was before me on the motion for an injunction pendente lite, I held that the city council had authority, upon its own motion, not only to make a detailed statement of the cost of a proposed street improvement, but as well to make a contract therefor. I also decided that the provision of the city charter forbidding a change of grade without the consent of a majority of the property owners of a street does not contemplate such slight changes of grade as are only incidental to the repaving of a street, and, further, that the grade lines of Grand street would not be substantially changed by the proposed work. The Appellate Division, on an appeal from the order then made, denying the plaintiff's motion for an injunction pendente lite, decided that, while the common council—

"is vested with entire power to ascertain the cost of an improvement, to hold a hearing and determine the propriety of the expenditure, no express power is conferred to spend the money by making a contract for the improvement unless at least one-third of those upon whom the expense of the improvement falls have indicated their approval by making a petition."

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Upon the trial of this case, it appears without dispute that there was no petition of the owners of one-third of the lineal feet frontage for the proposed improvement. Hence it follows that the plaintiffs are entitled to judgment for that reason alone.

As to the second question—i. e., that of change of grade—my conclusion now, after the trial and a consideration of all of the evidence, is that the contemplated work will result in substantial changes of the grade of Grand street, and that the work cannot be done, except upon the written application of the persons owning a major part of the property adjoining said street. No such application has been made, and it follows that the plaintiffs must prevail upon this branch of the case as well. The defendants claim that Grand street has never been graded within the meaning of the second section of subdivision 2 of section 1 of title 6 of the charter of said city, and that therefore the defendants could act without first obtaining such written application. The defendants also contend that the plans adopted by them do not call for such a change of grade as is contemplated by that section, and cite the case of Stenson v. City of Mt. Vernon, 104 App. Div. 17, 93 N. Y. Supp. 309, in support thereof, claiming that the filling and cutting necessary to conform Grand street to the levels of the proposed new work is merely incidental to proper grading.

For the past 70 years Grand street has been one of the principal public streets of the city of Newburgh, and its predecessor, the village of Newburgh. On November 19, 1835, the grade of a portion of Grand street was adopted by the village trustees of the village of Newburgh. · The city of Newburgh was incorporated in 1865, succeeding to all the rights, and assuming all the liabilities, of the old village. On January 7, 1890, the common council adopted the following resolution:

"Resolved, that the profile of the grade line on Grand street, between Broad and Nicholl, as prepared by the city surveyor under the direction of the mayor and street committee, be adopted, and the grade established as shown by the red line of said profile, and that the map of such profile be filed."

And on July 1, 1890, the following resolution was adopted:

"Resolved, that the grade line of both sides of grand street, from Washington to Second, be and the same is hereby fixed and established as shown on profile of said portion of Grand street, as made by Charles Caldwell, city surveyor, and on file in his office."

And on January 4, 1910, the following resolution:

"Resolved, that the grade line of the center and both sides of the following named streets be and the same is hereby fixed and established as shown by the red line on the several profiles made by W. J. Blake, Jr., city engineer, to wit: Prospect street, from Broadway to first street; Dubois street, from South to Gidney avenue; Grand street, from Clinton to Broad; First street, from Liberty to Dubois; East side of Edward street, from Renwick to South William."

[1] These resolutions cover almost the entire length of Grand street. It will be noted that the first resolution refers to the "profile of the grade line"; the second, to the "grade line of both sides";

the third, to the "grade line of the center and both sides." The testimony given at the trial shows that Grand street has in effect been graded to the grades established by said resolutions, and from time to time grades have been given to various owners of adjoining land, in order that they might construct sidewalks and otherwise improve their property, which they did according to the grades thus given them, and the lands about their buildings have been graded accordingly. Grand street is a residential street, and is thickly settled on both sides by many costly residences. These, it must be assumed, were built in reference to the established and recognized grade of Grand street. This is particularly true of the houses facing upon Grand street from the east, because a part of Grand street is on a hillside, and the land to the east is lower than the land to the west. It seems to me that, upon all the proof, it must be held that the grade of Grand street has been established. Folmsbee v. City of Amsterdam, 142 N. Y. 118, 36 N. E. 821; Fuller v. City of Mt. Vernon, 171 N. Y. 247, 63 N. E. 964; Archer v. City of Mt. Vernon, 63 App. Div. 286, 71 N. Y. Supp. 571.

[2] If the proposed levels, according to which the contemplated paving work is to be done, will tend to make the street generally higher or generally lower than it is at present and has been for years, it will amount to a change of grade. Farrington v. City of Mt. Vernon, 166 N. Y. 233, 59 N. E. 826. And in that event the work cannot be done, except upon the written application of the persons owning a major part of the property adjoining the same. The proposed levels are substantially higher on the east side of Grand street than the present established grade, and there is evidence that the values of some of the residences on the east side of Grand street will be considerably depreciated thereby.

The defendants claim that paving with asphalt or brick, or other hard pavement, requires that both gutters be about the same level, and that the roadbed be built on a true curve, while the plaintiffs contend that the east side of Grand street should be lower than the west side, it being a hillside street, and that both sides be left at their present grades, and the road bed be built on a parabolic curve, with the crown of the roadbed only one-fourth of its width from the west curb. This court will not undertake to decide which method would be the best to adopt. The fact is that the city has, by resolutions already quoted and by long usage, actually established and constructed the grade of the roadbed on a parabolic curve, with the east gutter and sidewalk lower than the west gutter and sidewalk; and the grade of the east gutter and sidewalk being so established and constructed, to now raise them to the proposed levels would be to change the grade of Grand street, within the meaning of subdivision 2 of section 1 of title 6 of the city charter.

It follows that the plaintiffs are entitled to judgment permanently enjoining the defendants from doing the proposed work, or executing a contract therefor.