SAMUEL SANBERG and Another, Appellants, *v.* MARGOLD REALTY
CORPORATION, Respondent.

First Department, January 9, 1931.

*Lewis Epstein* of counsel [*Saul B. Bradie,* attorney], for the appellants.

*H. Louis Jacobson,* for the  respondent.

MARTIN, J.   The plaintiffs brought an action to recover a down payment of $1,000 made to defendant on a contract for the purchase of a vacant piece of real estate in the city of New York, together with the interest thereon, and the reasonable expense of examining the title.   The defendant counterclaimed for specific performance.

At the trial at Special Term, Bronx county, plaintiffs' complaint was dismissed at the close of the case, and judgment was granted to defendant on its counterclaim for specific performance.   This appeal is from that decision and the judgment thereon.

On March 29, 1929, the parties entered into a contract for the purchase and sale of premises described therein.   The description

concluded with the words "Said premises being the northeast corner of Westchester and Rosedale Ave., and being approximately 100' by 100'." On May 10, 1929, the day fixed for closing the contract, plaintiff rejected title for the reason that the plot offered in the deed tendered by defendant was not a compliance with the contract, and demanded the return of the down payment and the reasonable expense of examining the title.

The contract, after describing the plot as consisting of certain numbered lots on a filed map, in a separate paragraph specifically located and represented the dimensions of the plot to be approximately 100 feet by 100 feet.

The defendant is unqualifiedly bound by its express representation that the plot is located at the "northeast corner of Westchester and Rosedale Ave.," and is "approximately 100 by 100'." This is so notwithstanding the reference to the filed map because it has been frequently held that while a vendee is chargeable with notice of all that the record shows, he may rely upon the express representations contained in the contract. The defendant owned and offered to convey a plot 106.91 feet by 100 feet by 87.98 feet by 101.78 feet, containing 9,744½ square feet. This is a very irregular plot. The east side of the plot is 12.02 feet less than the stipulated 100 feet; the west side of the plot is 6.91 feet longer than the stipulated 100 feet, and the deficiency in area amounts to 255½ square feet.

The appellants contend that the plot does not meet the description in dimensions, area and shape, three vitally important features. If the difference were confined to one only of the three, it might be argued that the plaintiffs' rejection of title was not justified, but the combination of all three makes plaintiffs' contention unanswerable.

The plot in question was not only not approximately 100 feet by 100 feet, but it was very irregular in shape and contained 255½ square feet less than a plot 100 feet by 100 feet. One of the features of the plot which decreases its value is the fact that on one side, instead of being 100 feet, it is 87.98 feet.

The word "approximately" has been defined in a number of instances. In *Ross* v. *Keaton Tire & Rubber Co.* (57 Cal. App. 50; 206 Pac. 645) the court said: "Approximately * * * 'is defined as very nearly, but not absolutely.' It is synonymous with and means 'about,' and is used in the sense of an estimate merely, meaning more or less, but about and near the amount, quantity, or distance specified." Oxford Dictionary: "Very near, in position or in character; nearly resembling. Nearly approaching to accuracy; fairly or reasonably correct." Funk & Wagnalls Dictionary: "Very nearly

but not absolutely. Nearly but not exactly accurate." Webster's Dictionary: "Near to correctness; nearly exact; not perfectly accurate."

In *Watson* v. *City of New York* (67 App. Div. 573, 581) the court, referring to the words "more or less," said: "Such words are precautionary, intending to cover slight or unimportant inaccuracies and are not to be construed as extending beyond known monuments or specific measurements and boundaries."

In *Von Bargen* v. *Ginsberg* (218 App. Div. 545) the description stated the street number and referred to a building thereon "on lot about 33 x 95 irregular." The court held that irregularities in a city lot ought not to go to the extent of holding the plot there offered as meeting the terms of the contract. It was there argued, as here, that, the lot number having been given, the description was sufficient.

The cases appear to give most consideration to the area of such parcels of land which generally affect its value and hold that the seller must give substantially the amount of land agreed upon. In the city of New York, where land is of such great value, especially business property, the absence of $255\frac{1}{2}$ square feet in a plot of the character here offered for sale is a substantial ground for rejecting title.

In *Raben* v. *Risnikoff* (95 App. Div. 68) the court held that a reduction of nine inches in the width and five feet in the depth of a city lot, the purchase price of which was $5,450, would have a very substantial effect upon the value received by the purchaser, for the difference of a few inches more or less in the lines within which a city lot is bounded might cause a difference in pecuniary value exceeding that of acres of farm land.

The difference in value between a plot approximately 100 feet by 100 feet and a plot of the irregular shape, dimensions and area of the plot here offered, because of such irregularity may amount to a very large sum. In many cases the courts have refused to enforce contracts, although a much less percentage in number of square feet was involved, where similar words of description were used and have required substantially the amount of property agreed upon in the contract.

We are of the opinion, therefore, that where a seller agrees to sell a plot approximately 100 feet by 100 feet, the buyer should not be compelled to take a plot irregular in shape with a much less area and such irregular dimensions as here set forth. The difference in value of such a plot is emphasized by its irregularity and the difficulty of building thereon.

The judgment should be reversed, with costs, and judgment directed for the plaintiffs, with costs.

DOWLING, P. J., and MERRELL, J., concur; O'MALLEY and SHERMAN, JJ., dissent.

O'MALLEY, J. (dissenting). The contract between the parties called for the purchase by the plaintiffs and the sale by the defendant of " all that certain plot, piece or parcel of land, situated, lying and being in the Borough of Bronx, County of Bronx, City and State of New York, known and designated as Lots No. 879 and 880, 881 and 882, on a map entitled ' Map of 1669 lots held by the Farmers Loan and Trust Co. as trustee under trust created by William Waldorf Astor, situated at Westchester, Tremont, Morris Park, Metcalf and St. Lawrence Aves., East 172d Street, East 174th Street, East 178th Street and East 180th Street, and intersecting streets and avenues, Borough of Bronx, City of New York,' made by George C. Hollerith the 22nd day of May, 1922, and filed in the office of the Register of Bronx County on the 14th day of June, 1922, Section 1 of said map being filed as Map No. 588, Section 2 of said Map being filed as Map No. 589, and Section 3 of said Map being filed as Map No. 590.

" Said premises being the northeast corner of Westchester & Rosedale Ave., and being approximately 100' by 100'."

The plaintiffs refused to accept a deed which purported to convey in the exact terms quoted. The basis of this refusal and the sole point relied upon by the plaintiffs is that the premises described are not approximately 100 feet by 100 feet, but are 106.91 feet on the west, 100 feet on the north, 87.98 feet on the east and 101.78 feet on the south.

The plaintiffs rely neither on fraud nor mistake, nor did they prove any specific reliance upon the alleged representation as to the plot being approximately 100 feet by 100 feet, nor any particular damage from the breach of such representation.

The map referred to in the description was thereby incorporated by reference in the contract to sell. This map shows the actual dimensions and shape of the plot. The plot, therefore, was described in specific terms. The statement that the plot was approximately 100 feet by 100 feet was a general description. The rule is that words of general description must yield to those of particular or specific description.

So far as the area of the plot is concerned, there was a discrepancy of only 2.55 per cent between a plot of 100 feet by 100 feet and that actually contained in the plot in question. Moreover, this was a corner plot and such sides as abutted upon the adjoining

streets were 100 feet or more in length. The Special Term, therefore, was justified as trier of the facts and of the law, in decreeing specific performance in favor of the defendant.

I, therefore, dissent and vote to affirm the judgment appealed from.

SHERMAN, J., concurs.

Judgment reversed, with costs, and judgment directed in favor of the plaintiffs, with costs. Settle order on notice. The findings inconsistent with this determination should be reversed and such new findings made of facts proved upon the trial as are necessary to sustain the judgment hereby awarded.