DEL BALSO CONSTRUCTION CORPORATION, Respondent, *v.* CITY OF NEW YORK, Appellant.

Argued April 21, 1938; decided May 24, 1938.

*William C. Chanler, Corporation Counsel (Oren Clive Herwitz, Paxton Blair* and *Charles Blandy* of counsel), for appellant. The elimination of the underpinning did not change the main purpose or object of the contract and did not alter the essential identity of the thing contracted for, *i. e.,* the section of the subway as described in the contract. Therefore, reinstatement of the judgment dismissing the second cause of action is required. (*Litchfield Construction Co.* v. *City of New York,* 244 N. Y. 251; *Kingsley* v. *City of Brooklyn,* 78 N. Y. 200; *McMaster* v. *State,* 108 N. Y. 542; *National Contracting Co.* v. *Hudson River Water Power Co.,* 192 N. Y. 209; *Dunning* v. *County of Orange,* 139 App. Div. 249; 204 N. Y. 647; *Kinser Construction Co.* v. *State,* 204 N. Y. 381; *Clark* v. *Mayor,* 4 N. Y. 338.) The reservation of a right to make changes in a public contract did not impair its validity. (*Matter of Merriam,* 84 N. Y. 596.)

*John F. Collins, Harry Merwin* and *Moses S. Finesilver* for respondent. The contract contemplated the underpinning of the buildings and the parties never intended that the underpinning could be omitted. (*Atwater & Co.* v. *Panama R. R. Co.,* 246 N. Y. 519; *Afgo Engineering Co.* v. *State,* 244 App. Div. 395; 268 N. Y. 716; *Moran* v. *Standard Oil Co.,* 211 N. Y. 187; *Mason Co.* v. *City of New York,* 249 App. Div. 538; 275 N. Y. 514; *Brooklyn Bus Corp.* v. *City of New York,* 274 N. Y. 140; *Wilson & English Constr. Co.* v. *N. Y. C. R. R. Co.,* 240 App. Div. 479; *Lowe* v. *City of New York,* 240 App. Div. 484; 265 N. Y. 583.) Defendant could not omit the underpinning to save money for the city. (*Kinser Constr. Co.* v. *State,*

204 N. Y. 381; *National Contracting Co.* v. *Hudson River Water Power Co.*, 192 N. Y. 209; *McMaster* v. *State*, 108 N. Y. 542.) The underpinning work was not incidental work. (*McMaster* v. *State*, 108 N. Y. 542; *Gage* v. *City of New York*, 110 App. Div. 403.) Changes and alterations of work called for in construction contracts, under rights reserved by the owner in such contracts, do not permit radical or substantial changes or alterations. The same principles are applicable to omissions. (*McMaster* v. *State*, 108 N. Y. 542; *Smith Contracting Co.* v. *City of New York*, 240 N. Y. 491; *Salt Lake City* v. *Smith*, 104 Fed. Rep. 457; *Bates & Rogers Const. Co.* v. *Board of Commrs.*, 274 Fed. Rep. 659.)

FINCH, J. This action arose out of a contract for the construction by plaintiff of a portion of the New York city subway system. The plaintiff was awarded the contract on its bid of $4,654,052, which was the lowest of those submitted by competing bidders.

In addition to the construction of the subway the contract provided for underpinning and demolition work. Accordingly, among those items upon which plaintiff was required to bid unit prices there was a series calling for the underpinning of certain buildings and another series calling for the demolition of specified buildings. Included among the forty-two buildings upon which plaintiff was asked to bid a price for underpinning was one at 335–355 Schermerhorn street, Brooklyn, for which the bid was $505,000, and one at 62 Flatbush avenue, for which the bid was $4,000. Both of these buildings belonged to the same company.

To accomplish the underpinning work it was necessary for the city to acquire easements in the property. An attempt to purchase such easements through negotiations prior to the preparation of the subway contract had failed. Proceedings were commenced to acquire these easements by condemnation, and, subsequent to the

execution of the contract involved herein, they were so acquired. Thereafter negotiations were commenced for the purchase of the entire property, including the right of the owner to the awards for easements already acquired by condemnation. Finally the owner agreed to sell for $1,100,000. At this figure the city, by acquiring the property, demolishing the buildings, and then, after the subway had been built, selling the remaining property, would expend $384,000 less than would be necessary if it merely acquired the easements and used the underpinning method. For this reason, and apparently also because the city had been informed that from an engineering standpoint there were hazards involved in the underpinning of the type of buildings involved, the city purchased the property and demolished the buildings. When the sale was consummated plaintiff was notified that the underpinning of the buildings would not be necessary. To this the plaintiff took exception and, although it subsequently, after reserving all rights under the contract, did some extra work resulting from the demolition of one of these buildings, it brought suit against the city for breach of contract.

The complaint in this action among other things sought to recover $354,782.50 damages for the failure of the city to permit plaintiff to do this underpinning work. This cause of action was based on the theory that plaintiff would have made approximately $293,000 profit on this work, and there would have been about $61,000 additional paid to it for concrete and steel if the underpinning work had been done. Eleven other causes of action were alleged in the complaint, of which this constituted the second cause of action. The other causes are not pertinent on this appeal. The trial court dismissed the second cause of action at the close of the plaintiff's case. The Appellate Division, one justice dissenting, reversed and granted a new trial. The appeal is here on a stipulation for judgment absolute.

Does the contract between the city and plaintiff permit the city to alter its plans so as to omit this underpinning without making it liable to plaintiff for loss of profits?

The contract provides:

"Article XLIII. *Drawings May Be Amplified or Altered.* \* \* \* (b) *The Board further reserves the right* to alter, in any way it may deem necessary for the public interest, the drawings aforesaid, in part or altogether, at any time during the progress of the work or *to omit any portion of the work without constituting grounds for any claim by the contractor for payment or allowance for damages or extra service* other than is provided for under the classified Items of the Schedule of Unit Prices." (Italics interpolated.)

Thus in the clearest of language the city reserves to itself this power to omit work without incurring liability.

Examination shows that in so far as the situation involved herein is concerned this provision is not limited by any other provision of the contract.

In none of the cases relied on by plaintiff was there involved a contract containing the omission clause quoted above. As a matter of fact, it was only after it had been held that the city could not with impunity omit certain work under the old form of contract which merely gave the city the power " to alter, in any way it may deem necessary for the public interest, the drawings," and contained the usual right to change work quantities, that, to remedy the situation, the omission clause involved herein was made a part of the standard form city contract. (See *Litchfield Construction Co.* v. *City of New York*, 244 N. Y. 251.)

Even under the old contract it was held that, in the exercise of the right to alter, the city could make changes in the details of the work which did not alter or destroy the essential identity of the work. In *Kingsley* v. *City of Brooklyn* (78 N. Y. 200) this court said, concerning such changes: " They were clearly within the scope and

object of the contract and the plan, which was the construction of the storage reservoir, and the alterations made as to the details did not, we think, constitute such a departure from the object in view as to affect the right to maintain an action for the work actually done under the requirements of the engineer" (p. 211). This right of the State to make changes in detail has been reaffirmed in *Kinser Construction Co.* v. *State* (204 N. Y. 381).

In the case at bar not only do we have the added rights reserved to the city by the omission clause but we have a situation where the omission of the work did not alter the essential identity or the main purpose of the contract. That purpose was to construct a subway, and the underpinning and demolition work were merely incidental to this main purpose. Even if the underpinning work did not come within the technical definition of incidental work as used in the contract it still would be obvious that the underpinning was incidental and subway construction was the primary object of this contract. We find, however, that even the contract refers to the underpinning work as incidental. In article VII (b) of the contract it is stated that " In order to construct the Railroad it will be necessary to take up and relay the sidewalks and roadway pavement or other surface material; to protect, support and maintain all buildings." Then follow a number of other things necessary to be done, including such incidental matters as remaking manholes and moving or altering gaspipes, poles and wires, and, finally, the following catchall: " and to do all such additional and incidental work as may be necessary." The omission, in fact, constituted only ten per cent, but whether an omission is incidental does not depend on the percentage of the work or the cost involved, but on the character of the work omitted. For example, compare *Kinser Construction Co.* v. *State* (204 N. Y. 381), where it was held admissible to eliminate forty-one per cent of the work, with *Litchfield Construction Co.* v. *City*

*of New York* (244 N. Y. 251), where it was held that the city lacked the power to omit two and one-half per cent of the work.

Nor can it be argued that the general omission clause of the contract is limited by the specific clauses contained therein. In the contract there are listed buildings with unit prices for their underpinning. The contract goes on to provide that the city shall have the alternative to require the removal of these buildings at a unit price fixed in the contract or it may require these buildings to be removed by other contractors. From this it is argued that, since no such alternative provisions are made for the buildings involved herein, the city lacks the right to omit this underpinning work. If this construction were adopted not only would the specific provisions of the contract limit the general provisions, but the existence of a specific provision would completely destroy the effect of a general provision. Certainly, the city, by inserting these specific provisions, did not intend to nullify the effect of the omission clause deliberately inserted in the contract to remedy the situation created by the decision in the *Litchfield* case. The city knew that in connection with certain buildings it might decide to demolish them rather than have them underpinned. Under such circumstances, in all fairness to the contractor, the city informed the contractor that it might decide to use this alternative. The fact that the city informed the contractor of the possible changes which it already had in mind does not mean that the city cannot make other changes which at that time it did not have in mind and which were later made necessary because of intervening facts.

Nor is there merit in the contention that it is unfair to deprive the contractor of a portion of the contract because in making his bid he figured on the burden of fixed overhead being borne by the entire contract. Where an omission clause is contained in a contract the contractor

must have this in mind in calculating his overhead when preparing his bid. " Bidders were bound to take notice that the State reserved the right to make additions and deductions in the work and changes in the plans and specifications covering the work, with no right on their part to claim damages for loss of profits on account thereof." ( *Kinser Construction Co.* v. *State*, 204 N. Y. 381, 394.)

This brings us to the contention that to permit the city to make such an omission as is here involved will give city officials the power to evade the requirements of competitive bidding; that city officials could thereby eliminate the profitable work from the contracts of those whom they did not favor. A somewhat similar contention was rejected in *Matter of Merriam* (84 N. Y. 596). While this argument concerning the evasion of competitive bidding requirements might be applicable in a case where the city arbitrarily omitted work, that situation is not now before us. Nor is this a case where the city has awarded an entire contract to the lowest bidder for the complete piece of work and has subsequently discovered someone who will do a portion thereof at a lower price. Here the city acted in good faith throughout. Prior to entering into the contract it had no idea that by purchasing the property it could save a substantial sum of money. Subsequently the opportunity to save this money was afforded to it, and, under the express terms of the contract, the city had the right to take advantage of such opportunity. It is true that the city did not find it absolutely necessary to omit this work, although even this is not certain in view of the statements of engineers that this underpinning work would be hazardous.

The order of the Appellate Division should be reversed and the judgment of the Trial Term affirmed, with costs in this court and in the Appellate Division.

CRANE, Ch. J., LEHMAN, O'BRIEN, HUBBS, LOUGHRAN and RIPPEY, JJ., concur.

Ordered accordingly.