DUNBAR & SULLIVAN DREDGING COMPANY, Respondent, *v.* THE
STATE OF NEW YORK, Appellant.

(Claim No. 25371.)

Fourth Department, May 8, 1940.

*John J. Bennett, Jr., Attorney-General* [*Leon M. Layden, Assistant Attorney-General,* of counsel; *Joseph I. Butler, Assistant Attorney-General,* with him on the brief], for the appellant.

*George H. Rothlauf,* for the respondent.

DOWLING, J.   On July 17, 1936, the State, by its chief engineer of the State Department of Public Works, entered into a contract with the Dunbar & Sullivan Dredging Company of Detroit, Mich., for excavating in the Barge Canal from Lock No. 2 at Fulton to Lock No. 5 at Minetto, Oswego county, N. Y., being Contract U. S. 14.   The estimated amount of excavation under the contract was 541,000 cubic yards of which approximately 207,000 cubic yards was ledge rock.   The contract was an area contract and the bids were unclassified.   The State agreed to pay for the excavation the sum of $1,919,640.   The Dunbar & Sullivan Dredging Company agreed to supply all material, labor and machinery required for a faithful and speedy performance of the work.

The contract provided: " The work to be commenced promptly, progressed with diligence, in the order directed and under the supervision of the Chief Engineer, Department of Public Works, and in accordance with the drawings and specifications prepared by the Chief Engineer, Department of Public Works, and to be fully completed on or before December 1, 1938 * * *.   It is understood and agreed that all the terms, provisions, conditions and obligations set forth in this Agreement, the Proposal, the General Requirements, the Drawings and Specifications, constitute a part of this contract, and are to have the same force and effect as if set forth specifically and at length herein."

The specifications provided in part:

" All proposals will be held to have been made with full knowledge of conditions and requirements.   The Contractor will be held to have visited the premises prior to the time of submitting bids and to have appraised conditions under which the contract is to be executed."

" Contractor will be paid in monthly approximate estimates, a sum not to exceed ninety per cent of the value of the work performed as so certified by the Engineer except as provided in paragraph 2.100."

" The Department of Public Works, subject to the approval of the Division Engineer, North Atlantic Division, U. S. Army reserves the right until the final completion and acceptance of the work, to make such additions to or deductions from such work or changes in the drawings and specifications covering the work as may be necessary and the contract shall not be invalidated thereby;

and the contractor shall do and complete the work in accordance with such additions to or deductions from or changes in the drawings and specifications and no claim shall be made by the contractor for any loss of profits because of any such change or by reason of any variation between the quantities of the approximate estimate and the quantities of the work as done * * *." (§ 1.32.)

" No claim shall be made against the State because the estimate, tests or representations of any kind affecting the work made by any officer or agent of the State, may prove to be in any respect erroneous." (§ 1.33.)

The State prepared the plans and specifications from soundings it had taken in 1935. The contract drawings consisted of sheets 1 to 29, inclusive.

The contractor entered upon the performance of the contract and completed it within the required time, to the satisfaction of the State. The contractor received final payment on the 13th of September, 1938. The contractor executed a form receipt on that occasion containing the following reservation: " *We reserve the right to file a claim for quantities in Section 1 of Contract U. S. 14 Barge Canal Improvement.*"

The contract consisted of nine separate sections or subdivisions. But the excavation for each section or subdivision comprised only an item in the contract. (Sheet 1 — Information for Proposers.) There is no dispute as to any of the items except item No. 1, section No. 1, Lock 2 to Lock 3. The contract involved the deepening of the canal from twelve to fourteen feet with a foot tolerance. Sheet No. 3 of the plans depicts the dispute before us. Section 1, on sheet 3, under the heading " Earth Cubic Yards," indicates that there were 24,294 cubic yards of earth to be excavated in that section. In the center of sheet No. 3, marked with an asterisk, is the following notation: " This quantity will be reduced approximately 10,000 cu. yds. because of maintenance dredging by the State between locks 2 and 3, Fulton, before contract work is executed in this section." Sheet 3 was prepared on or before March 23, 1936. It is well to keep this date in mind because the contract was not let until July, 1936.

When the contractor began to do the dredging between Locks 2 and 3 in section 1, it discovered that the State had excavated 17,676.3 cubic yards instead of the 10,000 cubic yards noted on sheet No. 3. The contractor continued with the performance of the contract and, after the work had been completed, the contractor duly presented the claim in question asking damages for breach of contract for 7,738 cubic yards at five dollars and ninety cents per cubic yard, that being the contract price. By continuing the

performance of the contract the contractor did not waive the breach of the contract by the State, if breach there was. (*Byron* v. *Low*, 109 N. Y. 291, 295, 296.) The claim came to trial before Judge BARRETT. The claimant introduced the contract, plans and specifications and proof of presentation of claim. The claimant then called its engineer who testified that it was possible for one performing dredging work to determine when a specified quantity has been removed. The determination in such case is made by taking cross sections daily and keeping a check on them. The court found that the State could have determined when it had removed 10,000 cubic yards. The court found, Finding 29: " That the State unnecessarily performed 7,676.3 cubic yards of excavation within Section 1 that were part of the work included in claimant's contract." Claimant's engineer also testified that claimant's bid would have been higher had it known at the time that the State would remove more than 10,000 cubic yards. It was conceded on the trial that the fair value of removing silt or earth was seventy-five cents per cubic yard. The State rested at the close of claimant's case and moved for dismissal of the claim. Decision of the motion was reserved. Judge BARRETT wrote an opinion to the effect that the State unnecessarily had removed this additional 7,676.3 cubic yards of earth, thereby greatly increasing the relative proportions of rock and earth to the claimant's damage. Judge BARRETT also held that such action upon the part of the State was not authorized under the terms of the contract and that the claimant did not waive its right to loss of profits under the provisions of the contract. The Court of Claims awarded the claimant a judgment against the State for the sum of $39,532.95, with interest from September, 13, 1938. From the judgment entered, amounting to $41,751.18, the State has appealed. The State contends that the terms of the contract preclude a recovery. The State bases its claim principally upon sections 1.32 and 1.33 of the specifications as above set forth and upon the information furnished to bidders to the effect that each section or subdivision was only an item in the contract and that the removal by the State of 17,676.3 cubic yards was approximately 10,000 cubic yards considering the fact that the contract called for the excavation of 541,000 cubic yards. The State relies on *Del Balso Construction Corp.* v. *City of New York* (278 N. Y. 154) in support of its position. In that case the contract clearly provided that the city might omit part of the work and to that extent, at least, the Del Balso contract differs from the one before us. The language of section 1.32 is somewhat ambiguous. Hence we are not able to say, in view of the facts contained in the record, as matter of law, that the State, under section 1.32, had the absolute

right to excavate and remove more than 10,000 cubic yards of silt.

No additions were made to the work under the contract. No changes were made in the drawings or specifications and there were no variations between the estimates and the work done except for this 7,676.3 cubic yards excavated by the State. It is true that the contractor had the advantage of dredging under the foot tolerance allowed by the contract. No error in respect to the 10,000 cubic yards is claimed by either party.

Under section 1.32 the State " reserves the right until the final completion and acceptance of the work, to make such additions to or deductions from such work * * * as may be necessary and the contract shall not be invalidated thereby; * * * and no claim shall be made by the contractor for any loss of profits because of any such change or by reason of any variation between the quantities of the approximate estimate and the quantities of the work as done." The court below held that this section did not authorize the State to excavate this additional yardage. The claimant maintains that the State could not, under the contract, excavate more than 10,000 cubic yards without breaching the contract. By reason of the fact that the 10,000 cubic yards were definitely related to one section of the contract, we think that the expression " approximately 10,000 cu. yds." does not protect the State, as " approximately " would mean only a negligible deviation. (*City of Richmond* v. *Smith & Co., Inc.*, 119 Va. 198, 206, 207; 89 S. E. 123; *Sanberg* v. *Margold Realty Corp.*, 231 App. Div. 241, 242; revd. on another ground, 256 N. Y. 228.) The contract in question should be construed as if it were between individuals as the rights of the public are not involved. (*Dermott* v. *State*, 99 N. Y. 101, 107.)

The record does not disclose when the State removed the 17,676.3 cubic yards of earth. For all that appears it may have been removed before the contract was signed. It appears that the State barges were dredging somewhere along the line covered by the contract when claimant's engineer visited the area in May and June, 1936, at what point is not established. We are inclined to the view that the State, under section 1.32, had a right to excavate beyond the 10,000 cubic yards providing such excavation was reasonably necessary in order to maintain navigation in the canal, and whether such excavation was reasonably necessary constituted a question of fact. (*Kinser Construction Co.* v. *State of New York*, 204 N. Y. 381, 391.) The word " necessary " does not mean absolute and indispensable. (*Jerome* v. *Ross*, 7 Johns. Ch. 315, 339, 340.) The State could not, under the guise of necessity, alter or destroy the essential identity of the thing contracted for. (*Nat. Contracting Co.* v.

*H. R. W. P. Co.*, 192 N. Y. 209, 217.) No claim is made that the essential identity of the thing contracted for had been altered or destroyed by the extra dredging on the part of the State.

We are also influenced in our interpretation of section 1.32 by the following provisions of the specifications relating to navigation:

" Attention is called to the fact that the work to be done under this contract provides for materials to be excavated within the limits of the navigation channels of the Barge Canal and that the Barge Canal will be open to navigation during the progress of the work except as hereinafter noted." (§ 1.25.)

" The Contractor's attention is called to the fact that the canal is open for navigation between dates which are specifically established for each year by the Commissioner of Canals and Waterways." (§ 1.26.)

" The Contractor's attention is called to the fact that the normal pool level elevations shown on the contract drawings between Locks 2 and 5 on the Oswego Canal are affected by the flashboards maintained on the dams forming the various pools." (§ 1.38.)

It may be that the State was required to take out this additional yardage owing to the fact that the water in the canal had been lowered by operation of the flashboards or for some other reason. The State was required to keep the canal navigable during the navigation season. It had to maintain at least a twelve-foot level for the barges then operating. The record is silent on this score. The burden was on the claimant to prove that the State was not reasonably justified in excavating the additional 7,676.3 cubic yards of dirt. (*Moynehan* v. *State*, 1 N. Y. Supp. [2d] 907.) This burden it failed to carry.

The claimant's engineer visited the sections involved in the contract in May and June, 1936, but he made no attempt to verify the specifications and plans as to quantities as the claimant was required to do under the terms of the contract. There is here no claim of fraud or misrepresentation, as was the case in *Jackson* v. *State of New York* (210 App. Div. 115; affd., 241 N. Y. 563). The claimant could have satisfied itself as to the quantities of earth actually present when the contract was made. Claimant was in no way misled by the State. Under these circumstances, assuming the earth had been excavated before the contract was signed, the claimant cannot complain if the quantity was less than it had supposed. (*Foundation Company* v. *State of New York*, 233 N. Y. 177, 185; *Langley* v. *Rouss*, 185 id. 201, 209; *Horgan* v. *Mayor*, 160 id. 516, 520; *Faber* v. *City of New York*, 222 id. 255, 260.) A contractor who submits a gross bid for the entire performance of a given work assumes the risk as to the nature and quantity of the work to be performed, even though approximate

estimates of the quantities which are materially wrong have been prepared by the public authorities for the guidance of bidders. (*Lentilhon* v. *City of New York*, 102 App. Div. 548, citing *Sullivan* v. *President, etc., of Village of Sing Sing*, 122 N. Y. 389.) A bidder is not entitled to rely on the plans alone but is required to resort to the contract and the specifications and he is under the duty to examine the work and make investigation for himself. (*Barash* v. *Board of Education*, 226 App. Div. 249, 250; affd., 255 N. Y. 587.)

Notwithstanding the fact that the claimant failed to establish its claim, the interests of justice require that a new trial should be had as a full development of the facts is essential to a proper solution of this controversy.

The judgment, therefore, should be reversed on the law and a new trial should be granted, with costs to the appellant to abide the event.

All concur, except CROSBY, P. J., and HARRIS, J., who dissent and vote for reversal on the law and for dismissal of the claim on the ground that the terms of the contract preclude any recovery. Present — CROSBY, P. J., TAYLOR, DOWLING, HARRIS and McCURN, JJ.

Judgment reversed on the law and a new trial granted, with costs to the appellant to abide the event.