A. E. OTTAVIANO, INC., Claimant, *v.* STATE OF NEW YORK, Defendant. (Claim No. 30219.)

Court of Claims, February 7, 1952.

*John B. Gilleran* and *Richard H. Tunstead* for claimant.

*Nathaniel L. Goldstein, Attorney-General (Burns F. Barford, Robert J. Cooney, Jr.,* and *Arthur W. Mattson* of counsel), for defendant.

SYLVESTER, J.   Claimant seeks damages sustained by it, and its subcontractors, by reason of certain work done under a contract dated July 15, 1947, for the construction of the substructure of the Peekskill-Annsville Bridge across the Annsville Creek in the city of Peekskill and of an approach thereto. Heretofore an award was made to claimant for the amount concededly due upon the final estimate is the sum of $20,557.02, thereby reducing the instant claim to $211,048.89.

In the accompanying findings of fact and conclusions of law, it is found that the State has breached its contract in the following respects:

(1) That the State improperly withheld from the claimant material information in its possession prior to the bidding as to the subsurface conditions existing at the site of the north approach and misrepresented the conditions which would prevail in the stream channel during the performance of the work in the construction of the bridge structures;

(2) that the State improperly and unreasonably delayed, impeded and retarded claimant's operations for long periods of time and prevented the completion of the contract within

the allotted time and forced the claimant to perform the work over an extended period of almost two years;

(3) that the State improperly, unreasonably and unnecessarily compelled and required the claimant to perform the contract work under changed and altered plans and conditions, not contemplated by the contract, and which rendered the work more costly and burdensome than originally contemplated by the parties;

(4) that the State failed to provide the claimant with a clear site to perform the work in the manner originally contemplated by reason of its refusal to free the creek bed of the obstructive overburden of mud deposited thereupon as a result of the placing and settlement of the embankment for the north approach and to maintain the creek in its original navigable condition during performance; and

(5) that the State failed and refused to compensate the claimant for certain extra and additional work performed by it under such altered plans and conditions and to allow in the final estimate and to pay claimant for certain items of work performed by it within the terms and provisions of the contract, for which it was entitled to payment under the item quantities and prices specified therein.

Briefly, the actual working conditions existing at the site bore no resemblance whatever to those depicted on the plans. Claimant was to discover that, beneath the site of the north approach, the subsurface of the creek bed consisted of soft and free-flowing mud and silt, incapable of bearing any burden of rock or earth fill. Prior to the letting, the State had made certain borings (B17 to B29 incl.) which were omitted from the plans and were not called to claimant's attention, and which would have disclosed that any rock and earth fill applied thereat would have displaced the underlying muck, causing mud waves to envelop nearby sites, including some of the piers. Accordingly, instead of the anticipated " water work " at these locations, claimant's subcontractors were required to do their work hampered by the mud. Bearing in mind the short period of time in which bids were required to be submitted (June 4 to June 18, 1947), it cannot be said that claimant was under a duty to engage in marine subsurface exploration of areas at which borings were not disclosed on the plans (site of north abutment). Without the information to be derived from the borings (B17 to B29 incl.), claimant and other bidders could reasonably conclude that the State's design, specifications of quantities and the physi-

cal condition at the site would permit the erection of the structures and the creation of an approach as shown on the plans.

When these hampering conditions were encountered, the State's engineers slowed down and, at times, completely halted operations to permit them to consider how to proceed. There followed many delays in the anticipated progress of the work, resulting in increased costs to claimant due to the changed conditions, for which, it is held, the State is answerable. (*Jackson v. State of New York,* 210 App. Div. 115, affd. 241 N. Y. 563; *Young Fehlhaber Pile Co. v. State of New York,* 177 Misc. 204, affd. 265 App. Div. 61; *Atlanta Constr. Co. v. State of New York,* 103 Misc. 233; *Jandous Elec. Equipment Co. v. State of New York,* 158 Misc. 238; *Foundation Co. v. State of New York,* 233 N. Y. 177; *Dunbar & Sullivan Dredging Co. v. State of New York,* 259 App. Div. 440; *Town & Country Engineering Corp. v. State of New York,* 46 N. Y. S. 2d 792; *Shore Bridge Corp. v. State of New York,* 186 Misc. 1005.)

Items " 1a ", " 1b ", " 1c ", " 2 ", " 4 ", " 8 " and " 14 " of the claim are allowed in the full amount. Item " 1d " is disallowed for the reason that it fails to compute as a deduction against the anticipated profit its cost of handling the bulk cement had it been used in the project. Claimant's theory of damage under item " 12 " is disapproved. The practice of allowing a percentage for overhead and profit is adhered to. (*Seglin Constr. Co. v. State of New York,* 22 N. Y. S. 2d 94, affd. 262 App. Div. 782, motions for reargument and leave to appeal denied 262 App. Div. 797; *Seglin-Harrison Constr. Co. v. State of New York,* 30 N. Y. S. 2d 673, mod. 264 App. Div. 466; *Wilaka Constr. Co. v. State of New York,* 52 N. Y. S. 2d 91; *Heating Maintenance Corp. v. State of New York,* 47 N. Y. S. 2d 227; *Town & Country Engineering Corp. v. State of New York, supra.*) Accordingly, claimant is allowed 10% for overhead and 10% for profit on each item of increased costs awarded, which represents fair and reasonable compensation. Under item " 13 ", " Increased Cost of Protecting Traffic ", an award is made in the sum of $3,500, which includes overhead and profit. Claimant was required to protect traffic for a period of approximately ten and one-half months beyond the contract completion date, for which it is entitled to compensation less the amount allowed for the initial costs of barricades and material purchased in the first instance and used during the prolonged period of the contract work. Item " 15 ", " Loss of Use of Money Retained ", is disallowed. (*Litchfield Constr. Co. v. City of New York,* 244 N. Y. 251.)

In addition, there were instances where the State, in its final estimate, improperly and inadequately computed the actual quantities of work performed under the contract items and failed also to allow the agreed price for such items. Some of these involved an interpretation of the payment provisions of the contract documents. Under item " 3 ", claimant demands payment for its cost of driving two test piles at the site of the north abutment to ascertain the depth of the rock formation at that location. They were ordered by the State's engineers in writing, and constituted extra work for which claimant is entitled to payment in the sum of $1,624.85. These test piles were driven to aid the State in revising the piling plan when it was discovered that the contract piles did not reach the rock strata. Claimant is also entitled to the sum of $1,069.80 under item " 5 " as the balance due on " mud excavation to permit access to the piers for pile driving "; under item " 6 ", to the sum of $1,410.60 as the balance due for the " total linear feet of piles placed in the leads " and as computed by the State both in its brief and proposed findings; and under item " 9 ", to the sum of $10,531.65, representing the balance due on trench and culvert excavation. Under item " 9 " which involves the excavation for the structures (the areas of which were covered by the mud wave and fill), it is found that the State's engineers were required to use a method of computation which would adequately and, as nearly as possible, fully compensate the claimant for the actual quantity of mud and silt removed by it for the construction of these structures (*Campbell* v. *State of New York,* 240 App. Div. 304) and that the method of measurement adopted by the State engineers was not calculated to produce that result. Claimant was entitled to a computation of this same type of excavation for the north abutment which would include all of the material above the theoretical grade line and upon slope lines which would adequately and fully compensate it for the amount of fill and mud removed at this site. In computing the award under this item, the claimant's request for payment for the 334.33 cubic yards of material between piers 3 and 4 is denied, since it appears that the quantity claimed was not actually excavated but represents the amount of settlement of the mud wave at that location. Claimant's request for this yardage is based upon the assumption that all of this material found its way into the openings for the piers as the excavation for these structures progressed. There appears to be no dispute that the mud did ooze into these openings or

" boil up " from the bottom during operations which required additional excavation. However, this circumstance and the extra work involved in coping with the superimposed mud upon the creek bed requires an award for this item based upon continuous slope lines. The State is credited with the sum of $1,500 as the approximate amount paid in the final estimate for the surcharge removed above the " theoretical grade line " at the site of the north abutment which was allowed at $1 per cubic yard under item " 2, Earth Excavation ".

Claimant is also entitled to an award under item " 10 " in the sum of $4,721 as the balance due for " stream channel excavation " which it removed upon orders and directions of the State's engineers at the price agreed upon. The State admits the total quantity of material removed in this connection and that the agreed price for unclassified excavation at $1.50 per cubic yard should be paid for all of it except that portion which it states should be allowed at $1 per cubic yard, in accordance with an alleged understanding between claimant's representatives and the State's engineer in December, 1947. The court is unable to segregate the quantity of material removed before and after this alleged understanding upon which the State relies. It is obvious that the State's computation includes material excavated both before and after the alleged " oral agreement ". The alleged agreement is not established and claimant is therefore allowed the full amount of this item in accordance with the stated contract compensation (item 4-C-S).

Under item " 11 " of the claim, the State's computations of the quantities for the removal of the surcharge more nearly reflect the true quantity of material removed. However, claimant is entitled to the additional sum of $0.50 per cubic yard for the quantity ascertained by State's engineers, and is therefore awarded $2,357.10 as and for the balance due on this item.

Under item " 7 ", claimant is entitled to the loss of profit on splices eliminated in the performance of the work amounting to $3,100. Elimination of contract items of work must be founded upon necessity. (*Town & Country Engineering Corp.* v. *State of New York, supra,* and cases cited.) Here, State's engineers eliminated the splice on some of the piles by directing the driving of the steel beams below the planned top elevation and ordering the contractor to excavate a hole or pocket around the pile to attach it to the concrete base of the south abutment structures instead of extending it to its designed position with a splice and extension piece. This was a departure from the

plans and resulted in the elimination of the splice and the additional piece of steel beam. Other splices were eliminated by using longer steel beams than those designated in the contract plans for particular locations. Claimant had the right to expect that the planned length of beams would be driven and, in the alternative, if they were not sufficient, to splice them and extend them to the correct length. Since the engineers did not follow the plan in this instance, an award based on this item is accordingly made.

Claimant is awarded the sum of $31,000 for the loss sustained by its subcontractor, Young Foundation Corporation, which sum includes loss for overhead and profit. There is dispute in the record as to the reasonable cost of performance of this subcontractor's work under the changed conditions. The original piling plan did not contemplate the many changes and obstructions that were encountered. The list of piles and designated locations indicated where and when they were to be driven and in a manner most economically feasible. Where the pile was of insufficient length, the specifications indicated that a splice should be affixed and an extension added. Instead, the State required longer piles to be substituted for the shorter ones and drastically disrupted the sequence of the piling plan. The subcontractor's increased costs and expenses were occasioned by its conformance of the work to the actual conditions thereat, including the delays and obstructions created by the mud wave and the extension of the north approach. In all the circumstances, the sum awarded fairly compensates this subcontractor for its damages.

It is found that the subcontractor, John Arborio, Inc., suffered damages due to the active interferences of the State's engineers with the excavating operations between August 26, 1947, and October 9, 1947, causing its equipment to remain idle. It also incurred other expenses due to the State's change of plans discontinuing the rock fill and substituting earth after Arborio had purchased and made arrangements for the rock spoil material. These damages are computed at $12,993.01, in which sum an award is accordingly authorized.

An award is made in the sum of $9,708.50 for the work of subcontractor Cooney Bros., Inc. This amount of damage accords with the computation of the Attorney-General as appears from his brief. Because of the disruption of the planned sequence of work and its postponement to the following years 1948 and 1949, it incurred additional expenses for wages, trucking and the use of equipment in the indicated amount.

The sums awarded are to bear interest at 4% from the date of the final estimate, June 1, 1949, to the date of entry of judgment.

The claim for interest upon the amount awarded by the separate judgment in the severed cause herein, dated November 6, 1950, was reserved for determination upon this branch of the case. Claimant having established its right thereto, is entitled to interest in the sum of $1,176.28, computed from June 1, 1949, to November 6, 1950.

Proposed findings of fact and conclusions of law submitted by claimant and the Attorney-General have been found or refused as therein indicated. Judgment is directed to be entered in accordance therewith.