■   CAMARCO CONTRACTORS, INC., Respondent-Appellant, v. STATE OF NEW YORK et al., Appellants-Respondents. (Claim No. 43787.) — STALEY, JR., J. Cross appeals from a judgment of the Court of Claims, which awarded claimant damages for breach of contract occurring in the course of performance of its contract for partial improvements at Mohansic State Park, which included preparations of a site for a swimming pool, parking lot and construction of a septic system. The State appeals from that part of the decision of the Court of Claims which found that claimant was delayed a total of 225 days, which delay was attributable to the State, and awarded the claimant compensation for labor, equipment and utilities in the sum of $45,143.26, and for engineering charges, field supervision, offices and overhead in the sum of $13,035.90, and further from that part of the decision which awarded the sum of $14,940 as a partial return to claimant of the sum deducted as liquidated damages by the State from claimant's final estimate. Claimant appeals from that part of the decision which denied claimant an award of damages for wasting by stock piling 52,593 cubic yards of excavated material originally planned for use as foundation embankment, and which further denied an award for damages for loss of profits as the result of deletions and changes of certain items in the

contract. The trial court found that the State was responsible for delaying claimant a total of 225 work days in the performance of its contract. Of this total the court allocated 89 days to site unavailability, 121 days to the State's change of plans and sequence of work, and 15 days to the revision of maps and plans. For the same delay of 225 work days plus 24 nonwork days, the court returned to claimant the sum of $14,940 from the amount charged by the State and deducted from claimant's final estimate. Claimant, according to its progress schedule planned to commence excavation work on June 19, 1961, but was prevented from commencing until July 19, 1961 by reason of the State's failure to complete its cross sections in the area of the initial excavation, and thus the State became responsible for a 30-day delay. Appellant in its brief states that "it was clear that the contractor had to wait until the initial cross sections were made" and that claimant's superintendent testified that the excavation work was begun on July 19, 1961 after the sections were taken. There is sufficient evidence in the record to support the trial court's finding of a 30-day delay between June 19, 1961 and July 19, 1961. Claimant originally planned to progress its work in the septic site first and at the pool site last. However, on June 22, 1961 the State directed claimant to give first preference to the pool site. The record does not indicate any objection by claimant to a change in its progress schedule to work at the pool site first, and it is further indicated that claimant could have worked both areas simultaneously if it had chosen to do so. In any event, the contract provided that the contractor was required to co-operate with other contractors "and to coordinate and arrange the sequence of his work to conform with the progressive operations of the work already under contract and to be put under contract". The State was within its authority under contract to change claimant's sequence of work, and no delay can be attributed to such order. The State further contends that any delay was caused by claimant in failure to supply sufficient men and equipment to perform the work, which contention is supported by letters from the State to claimant dated July 7, 1961, August 29, 1961, September 21, 1961 and January 8, 1962 wherein the State advised claimant that its work on the project was behind schedule, and that claimant had failed to furnish "adequate plant" or sufficient number of workers. The trial court's finding of 89 days' delay due to site unavailability should, therefore, be modified and reduced to a 30-day delay. Claimant further contends that the State issued a stop order by letter dated December 12, 1961, which prevented claimant from continuing its excavation work until April, 1962. The stop order letter directed claimant to cease excavating because the moisture content of the material excavated was excessive and would be unsuitable for fill and embankment. The letter further stated "In the meantime, other operations in which excessive moisture is not a factor, may proceed." On December 15, 1961 the State further advised claimant that there were several contract items on which it could be working at that time, and that its idleness was not authorized by the State. However, claimant shut the job down completely and did not return until February, 1962. Claimant contends that it should have been allowed to continue excavating waste material during the winter, but was prevented from doing so by the stop order. We believe that claimant's contention that the total delay resulted from the stop order is speculative. There is evidence that the completion of the work was delayed, at least in part, by the contractor's failure to furnish adequate labor and equipment in the early stages of the work, as well as its contumacious refusal to perform any work under the contract while the stop order was in effect. The State also contends that the award of 15 days' delay by the trial court

for revision of construction maps and plans was error. Claimant was requested to do extra work in the nature of seeding and sodding. This work was performed from April 15, 1963 to May 15, 1963 and from June 15, 1963 to June 30, 1963. Apparently, this work was delayed because of the wet season, but such delay because of weather conditions cannot be attributable to the State. The total amount of delay attributable to the State is 30 days and the award must be modified accordingly. (Cf. *Peckham Road Co.* v. *State of New York,* 32 A D 2d 139; *Norelli & Oliver Constr. Co.* v. *State of New York,* 30 A D 2d 992.) In regard to the claim for damages as the result of stock piling 52,593 cubic yards of waste material excavated, the total amount of unclassified material estimated to be excavated under the contract was 165,000 cubic yards, and the total amount performed by claimant was 157,177 cubic yards for which it was paid 70 cents per cubic yard. The plans estimated waste material at 3,700 cubic yards, while the actual amount of waste material excavated exceeded 52,000 cubic yards. The contract provided that no additional payment would be allowed for disposal of surplus material in spoil banks. The trial court properly denied recovery of any damages for waste disposal in spoil banks. Claimant had inspected the job site before the bidding, and there was no proof of any intentional misrepresentations or concealment by the State with regard to the estimate of the quantity of waste material so that the State's error was quantitative not qualitative, and there was no basis for a claim of damages for the extra work performed. (*Depot Constr. Corp.* v. *State of New York,* 23 A D 2d 707, affd. 19 N Y 2d 109; *Yonkers Contr. Co.* v. *New York State Thruway Auth.,* 25 A D 2d 811, affd. 23 N Y 2d 856.) Claimant further contends that it lost profits of approximately $43,000 by reason of deletions and changes in the contract reducing the amount of sheathing required for the support of trenches where pipe was being installed. The revisions ordered by the State elevated the location of the pipe to near ground surface which eliminated the necessity for the sheathing to support the sides of the trench. The contract provided that "The Engineer reserves the right to increase or diminish any or all of the above mentioned quantities of work or to omit any of them, as he may deem necessary, and such increase or decrease of the quantities given for any of the items shall not be considered as sufficient grounds for granting an increase in the unit prices bid." Such general omission clauses have been construed to permit the State to order deletions in contracts whenever they do "not alter the essential identity of the main purpose of the contract". (*Del Balso Constr. Corp.* v. *City of New York,* 278 N. Y. 154, 160.) Claimant has failed to establish in the record here that the portions of the contract deleted were more than incidental to the contract's main purpose, and the denial of any recovery for lost profits was correct. The award should be modified to allow $261 representing damages for sheathing and $443.79 for pipe construction, without interest; in addition, there should be allowed $1,800 representing return of monies held for liquidated damages; $6,056 for labor, equipment and utilities covered by the State's delay; and $1,790 for engineering charges, field supervision, and overhead caused by the State's delay, with interest. Judgment modified, on the law and the facts, so as to reduce the award to $10,350.79 and appropriate interest and, as so modified, affirmed, without costs. Staley, Jr., Greenblott and Cooke, JJ., concur in memorandum by Staley, Jr., J.; Herlihy, P. J., dissents and votes to reduce the award to $694.79. Herlihy, P. J. (dissenting). There is no showing in the present record that justifies this court in finding a 30-day delay because "of the State's failure to complete its cross sections in the area of the initial excavation". Consequently, there

is no basis for the number of days found by the Court of Claims by way of delays. It is possible from the present record to find that there may have been some few days' delay, but there is no testimony as to any number and, therefore, the claimant must fail for lack of proof. In any event, to arrive at any set delay would be speculation and surmise. The proof as to damages caused by delay should be readily discernible and subject to mathematical calculations based upon facts in the record. At best, it can be said that the record in its entirety would establish various interventions by both parties, but not sufficient by the State on the present record to justify an assessment of damages against it. To say this is to infer that possibly the claimant should not have been assessed liquidated damages for the number of days as determined by the State, but that issue was covered under the terms of the contract which were clear and unambiguous and at this junction of the case, this court is foreclosed from considering any such relief. The judgment should be modified by reducing the amount thereof to $694.79, and, as so modified, affirmed, without costs.