OPINION OF THE COURT
Louis C. Benza, J.
Claimant and the New York State Thruway Authority (hereinafter defendant) entered into a contract for the rehabilitation of two bridges in the defendant’s Buffalo Division. Claimant contends the defendant misrepresented the work to be performed, which misrepresentation, compounded by the active interference of defendant, required claimant to perform the work in a manner not contemplated by claimant resulting in claimant performing extra work at additional expense. Claimant also contends additional payments were due to it under the value engineering and incentive bonus provisions of the contract and for defendant failing to properly credit claimant for work deleted from the contract.
[That portion of the decision dealing with the first, second, third and sixth causes of action which the court decided can be found in the slip decision filed with the court on December 18, 1992.]
CAUSE OF ACTION FOR REIMBURSEMENT IN CONNECTION WITH THE VALUE ENGINEERING PROVISION OF THE CONTRACT
Detailed instructions are given in the proposal on what materials and information were to be submitted with each VECP application.
By letter dated June 13, 1985, claimant, with respect to the Buffalo Avenue Bridge, southbound, wrote to defendant requesting its approval to place the reconstruction slab concrete and the overlay concrete as one operation detailing the savings to be made and credit to be received by defendant. Defendant eventually approved the operation for both the southbound and northbound portions of the Buffalo Avenue *190 Bridges. On November 15, 1985, claimant again wrote to defendant and, in that letter, for the first time, requested that the change which had been proposed in the June 13 letter be considered VECP and that claimant be awarded half of all savings resulting from the changes. Ultimately, not only was VECP consideration not given to claimant’s proposal, but defendant took a credit against the contract price for deleting work as suggested by claimant in its June 13 letter. In its letter of June 13, 1985, claimant suggested that a 100% credit for the savings be taken by defendant, a factor which does not weigh in favor of claimant’s position for VECP treatment (see, exhibit 44 [where claimant proposes "a credit of $.92 per sq. ft. of slab reconstruction concrete paid under Item 578.01 * * * for the Southbound Buffalo Avenue Bridge”]).
Straw’s testimony that the placement of slab reconstruction concrete as part of the monolithic pour resulted in a cost savings to claimant, costs which it would otherwise have been required to expend under the contract, gives credence to defendant’s position that said savings should, therefore, be credited to defendant for deleted work. It should also be noted that the contract plans gave claimant an option to use monolithic pours of latex modified concrete overlay in place of class D concrete for partial depths repairs. The option, although not applicable for all slab reconstruction, was certainly not innovative and was excluded from VECP consideration because it was recognized as an optional operation permitted under the contract.
The court finds that claimant has failed to follow the prescribed procedures in the proposal for qualifying for VECP consideration and to prove that the placement of the slab concrete and the overlay concrete as one operation meet the specified requirements for VECP approval. Therefore, this cause of action is dismissed.
CAUSE OF ACTION IN CONNECTION WITH THE REDUNDANCY SYSTEMS
The contract required the construction and installation of redundancy systems for a lump-sum price of $100,000 at both ends of the North Grand Island Bridge, northbound. As a result of existing field conditions, the redundancy system called for in the contract for location U146 was deleted from the contract. The contract required bidders to allow for com *191 pensation for what claimant calls general expenses in the bid under recognized pay items.
Based on this requirement, Nichols testified that $50,000 of the total $1,064,725 general conditions costs were allocated to item 564.05. As a result of the deletion, the defendant eliminated item 564.05 and replaced it with item 921.8420FA, under which claimant was paid $34,717.14, which defendant concluded was the cost to claimant for placing the two redundancy units at location U04. As a result, claimant contends it lost the $50,000 of general condition costs which were loaded onto item 564.05. Nichols testified that item 564.05 did not generate $50,000 worth of general condition costs; however, the art of bidding contracts of this nature does not include a formula for spreading these costs throughout the specified unit pay items in the contract. In analyzing claimant’s contention, the claimant has failed to persuade this court that $50,000 of general condition costs were included in the contract price for this item of work. In the first instance, claimant failed to specify these costs either in its claim or bill of particulars. In claimant’s analysis of the cost of installing the redundancy units at location U04, claimant did not include any cost for general conditions items. Nor did claimant, in its presentation to defendant, either verbally or in writing, indicate a request that general condition costs be considered in evaluating the credit to be given claimant for the work performed or deleted. Further, it should be noted that the total bid price for all the work to be performed under the contract was $5,269,644 and the total general condition costs included in the bid cost was $1,064,725, the latter amount representing 20% of the total bid price. The total lump-sum bid for item 564.05 was $100,000, which represents 1.9% of the total contract cost, $50,000 of which allegedly represents general condition costs. Claimant, therefore, contends that an item representing 1.9% of the total cost carried 4.7% of the total general condition costs. Even giving artistic license to Nichols’ method of bidding, such a disproportionate allocation, when viewed in light of the documentary evidence presented, particularly claimant’s analysis that the installation of 50% of the redundancy system cost claimant $49,233.49, the credibility of Nichols’ testimony on this issue becomes circumspect. Regardless of claimant’s inability to establish by a fair preponderance of the evidence that item 564.05 carried a $50,000 general condition cost burden, the contractor stands the risk of loss of the overhead costs attached to a deleted item of *192 work (Del Balso Constr. Corp. v City of New York, 278 NY 154). The issue now presented is what claimant should be paid for work performed under a lump-sum item when a portion of the item is deleted by the defendant. In the instant case, the defendant paid claimant what defendant believed was claimant’s actual cost ($34,717.14) for installing the remaining redundancy system. Originally, the State requested claimant to submit a cost analysis for a credit to the defendant for the savings derived by eliminating the redundancy system at location U146. Claimant submitted an analysis which proposed a savings of $23,767.67. Apparently, the proposal was rejected without objection or dispute by claimant. An attempt was then made to evaluate the credit to claimant based on an analysis of its cost for the units placed. Finally, the defendant having eliminated item 564.05 from the contract added a new item (item 921.8420FA) and paid claimant the sum of $34,717.14. In adding item 921.8420FA as a new item, defendant apparently applied the provisions of section 109-05 (B) (2) of the specifications (force account charges) which applies to cost adjustments for new items in connection with which no existing contract unit prices are available and agreement cannot be reached, albeit the FA designation after the item number. Unexplainably, the defendant’s evaluation process in determining the savings resulting from deleting the redundancy unit differed from the process used in connection with the deletion of slab reconstruction concrete (see, infra). In the cause of action dealing with the deletion of slab reconstruction work, defendant took a credit based on the savings derived by the deletion; here, it paid claimant for the work done based on force account costs. It is the court’s finding that the force account procedure provided for under section 109-05 (B) (2) is not applicable as the work performed was not an unforeseen new item of work but constituted anticipated work which, although not of the same quantity, was nonetheless required under the contract.
Having determined that paragraph (B) of section 109-05 is not applicable for the price adjustment of this item of work, our attention focuses on paragraph (A) of that section. Had item 564.05 been bid on a unit price basis, only elementary arithmetic would be required; however, the item was bid as a lump sum and, therefore, an analysis must be made. The contract, itself, makes no provision as to how a deleted portion of a lump-sum item is to be evaluated. Had the entire item been deleted, claimant would not be entitled to any recovery *193 for the deletion (Del Balso Constr. Corp. v City of New York, 278 NY 154, 161, supra; Bero Constr. Corp. v City of New York, Ct Cl, filed Jan. 22, 1986, NeMoyer, J., claim No. 65063).* In the instant case, 50% of the lump-sum item was deleted and the contract provisions applicable on total deletion are not applicable, and the provisions providing guidelines for payment for deleted items bearing unit costs based on estimated quantities cannot resolve the issue presented. The court has not been directed by either party to any provision of the contract which could resolve the issue, nor has the court’s review of the contract documents discovered any applicable provision on the issue. As the issue was preserved by claimant’s proper dispute of the item, we must look elsewhere than in the contract for its resolution. Certainly, the parties’ actions in resolving similar problems arising during the contract period are relevant as is the agreement reached by the parties through negotiations held pursuant to the issue-resolving provisions of the contract.
When a partial deletion of a lump-sum item occurs, absent any provision in the contract explaining how computation of the payment is to be made, the question to be resolved is whether the owner is entitled to a credit for what the contractor saves by not completing the work (savings credit) or whether the owner is required to pay the contractor for the cost of the actual work performed under the item (cost payment). A search of New York case law has failed to reveal any reported cases dealing with the issue.
Although claimant’s proof at trial related to its attempt to establish the loss of general condition costs attached to the lump-sum item, claimant also submitted proof of the negotiations undertaken between the parties to resolve the dispute. Exhibit 47 contains the correspondence and cost analysis made by both parties. Claimant, in its final letter on the subject, requested $49,233.49 as its cost of completing the installation of the redundancy system at location U04. It is apparent and the court finds that the parties agreed to resolve the dispute pursuant to the dispute provisions of the contract (Disputed Work § 105-14) by paying claimant for its actual cost plus overhead and profit. The only disagreement between *194 the parties involved the amount to be paid. At trial, claimant submitted proof of its cost, which proof was unrefuted by the State. The court finds that claimant has established by a fair preponderance of the evidence that the total cost plus overhead and profit amounted to $49,233.49. As claimant has previously been paid $34,717.14, claimant is entitled to judgment in the amount of $14,516.35. It should also be noted that although estimated quantities were not stated in the unit price bid for this item of the work, the contract clearly called for identical systems for both ends of the bridges. We could assume that 50% completion would require 50% payment, which, in this case, would be $50,000. Claimant’s proof, however, was in the amount of $49,233.49.
The State’s motion to dismiss made at the close of trial and upon which the court reserved decision is now granted except that judgment in favor of claimant shall be entered in the sum of $16,812.65 as found in the causes of action listed under paragraphs 7 and 10 of the claim. Said sum is to bear appropriate interest from February 3, 1987 (date of final payment) to the date of this decision (CPLR 5001), and thereafter to the date of entry of judgment (CPLR 5002). Both parties having waived the submission of proposed findings of fact, the above constitutes the decision of this court pursuant to CPLR 4213.
[Portions of opinion omitted for purposes of publication.]

 The Courts in Del Balso (supra) and Bero (supra) held that if a portion of contract work is deleted, claimant is not entitled to recover fixed overhead costs on that item. The risk of deletion rests upon the contractors. The witness who prepared the bid in Bero was the same witness who prepared claimant’s bid and testified here.